STEWART, Circuit Judge:
We must decide whether certain provisions of Act 1254 (codified at La. R.S. 40:1299.35.5 (West Supp.1996)), which changed Louisiana’s judicial bypass procedure for minors seeking abortions, comports with the Due Process Clause of the Fourteenth Amendment. We hold that it does not and affirm the district court’s summary judgment which permanently enjoined La. R.S. 40:1299.35.5(B).
LEGISLATIVE BACKGROUND
In Louisiana, minors under the age of eighteen must obtain the consent of at least one parent or legal guardian before a physician has the legal authority to perform an abortion. La. R.S. 40:1299.35.5(A) (West 1992). However, a physician may perform the abortion without the consent of a parent or legal guardian if the minor exercises her rights under a judicial bypass procedure prescribed in La. R.S. 40:1299.35.5(B). Section 1299.35.5(B) has, since 1978, undergone changes. Because this appeal largely turns on the 1995 changes to § 1299.35.5(B), we believe that a brief review of the legislative history of § 1299.35.5(B) sheds valuable light on the issues before us.

A. The 1978 Version of La. R.S. 10:1299.85.5(B)

We begin in 1978, when the Louisiana Legislature enacted La. R.S. 40:1299.35.5 (the 1978 Act), which, among other things, regulated the circumstances under which minors could obtain abortions. Notably, the 1978 Act, while providing for a judicial bypass, gave little (if any) guidance to courts faced with minors seeking abortions. Subsection (A) of the 1978 Act, titled “Notice and consent,” provided that the parents or legal guardian of a minor under eighteen must receive actual notice twenty-four hours before the minor had an abortion or, if the parent or legal guardian could not be reached, that parent or legal guardian must receive constructive notice seventy-two hours before the abortion. The sole exception to these parental notification requirements was a bare-bones judicial bypass provision, which stated simply “unless the abortion is ordered by a court having jurisdiction over such minor pregnant woman.” Subsection (B) provided that if the minor was under the age of fifteen, she must obtain informed, written consent from a parent or legal guardian or “obtain[ ] an order from a court having jurisdiction over her that the abortion be performed or induced.” Neither subsection (A) nor (B) provided any criteria that must be met before a judge could, Without any notice to the parent(s) or legal guardian(s), order a minor to have an abortion.
Then, in 1979, the Supreme Court handed down Bellotti v. Baird, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (Bellotti II), in which a plurality of the Court set forth the standards that should govern the judicial bypass procedure for minors seeking abortions. Recognizing the parent-child tension that may accompany a minor’s wish to have an abortion, the Court held that a minor may seek an order from a court, without the consent or notification of a parent or legal guardian, that authorizes the procedure. Id. at 646-48, 99 S.Ct. at 3049-51. In particular, the Court held:
If she satisfies the court that she is mature and well enough informed to make intelligently the abortion decision on her own, the court must authorize her to act without parental consultation or consent. If she fails to satisfy the court that she is competent to make this decision independently, she must be permitted to show that an abortion nevertheless would be in her best interests. If the court is persuaded that it is, the court must authorize the abortion.
Id. at 647-48, 99 S.Ct. at 3050 (emphasis added). Approximately eight months after Bellotti II was decided, Louisiana’s skeletal judicial bypass provision was struck down as inconsistent with Bellotti II. In Margaret S. v. Edwards, 488 F.Supp. 181, 203 (E.D.La. 1980) (Margaret S.(I)), the district court held: “This section [§ 1299.35.5(B)] says *1100 nothing more than the pregnant minor may receive an order from a ‘court having jurisdiction over her that the abortion be performed or induced.’ This is not enough____ La.Rev.Stat.Ann. § 40:1299.35.5(B) sets forth no standards or guidelines for the minor seeking judicial approval for abortion.”

B. The 1980 and 1981 Versions of La. R.S. 10:1299.85.5(B)

In 1980, the Louisiana Legislature responded to Margaret S.(I) and, among other things, changed La. R.S. 40:1299.35.5(B) to comply with Bellotti II. Most importantly for purposes of this appeal, the new statute contained the mandatory language from the Bellotti II decision. La. R.S. 40:1299.35.5(B) provided in part: “The court shall authorize the abortion only if the court finds that the woman is sufficiently mature and well-informed to make an intelligent decision on her own concerning the abortion, or, if the court finds that regardless of the capacity of the woman to make the decision, the abortion would be in her best interest.” (Emphasis added). The 1980 version also included an expediency clause: “Such applications shall be heard summarily and expeditiously and shall take precedence over matters on the docket of the court.” (Emphasis added).
In 1981, Louisiana modified its abortion statute, beginning with a general statement of legislative intent. Section 1299.35.0 (West 1992) provided in part: “It is the intention of the Legislature of the State of Louisiana to regulate abortion to the extent permitted by decisions of the United States Supreme Court.” In 1981, the legislature also refined and expanded § 1299.35.5(B), and the pertinent sections read as follows:
(3) Each application shall be heard in chambers, confidentially, in a summary manner, and within forty-eight hours of the filing thereof.
(4) If the court finds that the minor is sufficiently mature and well enough informed to make the decision concerning the abortion on her own, the court shall issue an order authorizing the minor to act on the matter without parental consultation or consent.
(5)If the court finds that the minor is not competent to make the decision concerning the abortion on her own, but finds that the abortion nevertheless would be in the best interest of the minor, the court shall issue an order authorizing the abortion.
(Emphasis added). Subsections (4) and (5) parsed out the “maturity and well-informed” provision and the “best-interests-of-the-minor” inquiry. As with the 1980 version, the 1981 version of § 1299.35.5(B) retained the mandatory “shall” language. However, the word “expeditiously” was removed and a forty-eight hour time frame for hearing a minor’s application was imposed. With these new changes in place, § 1299.35.5(B) survived a constitutional attack the next time around. See Margaret S. v. Treen, 597 F.Supp. 636, 650-52 (E.D.La.1984) (Margaret S. (II)), aff'd on other grounds sub nom. Margaret S. v. Edwards, 794 F.2d 994 (5th Cir.1986).[1]
C. Act 1251 — The 1995 Version of La. R.S. 10:1299.35.5(B)
And so it was for fourteen years. In 1995, however, the Louisiana Legislature went back to the drawing board with Act 1254, which expanded and changed § 1299.35.5(B) to read in part:
(3) Each application shall be heard in chambers, anonymously, in a summary manner, and within forty-eight hours of the filing thereof.
(4) If the court finds, by clear and convincing evidence, that the minor is sufficiently mature and well enough informed to make the decision concerning the abortion on her own, the court may issue an order authorizing the minor to act on the matter. Prior to any such order, the court may require the minor to participate in an evaluation and counseling session with a mental health professional from the Depart *1101 ment of Health and Hospitals, office of mental health, and a staff member from the Department of Social Services, office of community services. The court may refer the petitioner, if necessary, to the appropriate Department of Health and Hospitals, office of mental health regional office to arrange the evaluation and counseling session -within forty-eight hours of the ex parte hearing, excluding legal holidays.
(5) If the court finds that the minor is not sufficiently mature and well enough informed to make a decision intelligently among the alternatives, the court shall decide whether or not it would be in the best interest of the minor to notify her parents or guardian of the proceedings. If the court finds that it is in the minor’s best interest to notify her parents or guardian, the court shall so notify and reconvene the proceedings within forty-eight hours with the parents or guardian present to advise and counsel the minor and aid the court in making its determination whether or not the abortion would be in the best interest of the minor.
(6) If the court finds that the minor is not competent to make the decision concerning the abortion or that it would not be in the minor’s best interest to notify her parents or guardian, the court may issue an order authorizing the abortion if the court finds, by clear and convincing evidence, that the abortion would be in the best interest of the minor.
(Emphasis added). Three changes to Louisiana’s bypass procedure are relevant for purposes of this appeal:[2] (1) in subsections (4) and (6) (which correspond to subsections (4) and (5), respectively, in the 1981 statute), “shall” has been changed to “may,” so that if the juvenile court finds that a minor is mature and well-informed or that an abortion would be in the minor’s best interest, the court now “may” order an abortion; (2) subsection (4) permits judges to refer a minor to a state-sponsored counseling and evaluation session within forty-eight hours of the ex parte hearing; and (3) subsection (5) states that a juvenile court judge is compelled to notify the parents or guardian of an immature minor if doing so is in the best interest of the minor.
PROCEDURAL HISTORY
On July 6, 1995, Causeway Medical Suite and Hope Medical Group for Women (plaintiffs) filed suit challenging the constitutionality of Act 1254. The plaintiffs sought injunctive relief, claiming that Act 1254 violated the Due Process Clause of the Fourteenth Amendment because Act 1254 (1) provided juvenile court judges discretion to deny a minor an abortion even though the minor demonstrated that she was mature and well-informed or that the abortion would be in her best interest; (2) failed to establish a time limit for an expeditious resolution of the minor’s bypass application; (3) allowed the juvenile court to refer minors to state-sponsored evaluation and counseling without providing any time frame within which counselors are to report back to the court, thereby depriving minors of an effective opportunity to obtain an abortion and preventing the minor from remaining anonymous; and (4) breached the minor’s confidentiality by permitting the juvenile court to notify the minor’s parent that she is seeking an abortion if the court finds such notification would be in the minor’s best interest.
With one exception,[3], the district court agreed with the plaintiffs on each of these points., 905 F.Supp. 360, 364-66 (E.D.La. 1995). Accordingly, the district court entered summary judgment, permanently enjoining Act 1254 because it “constitute!)!] an undue burden on the right of minors to have access to abortion services by way of a judi *1102 cial bypass of the parental consent requirement and thus violates the Due Process clause of the Fourteenth Amendment.” Id. at 366. This appeal followed.
DISCUSSION
The State makes three claims on appeal. First, it claims that the plaintiffs do not have standing to bring this lawsuit because there is no “case or controversy.” Second, the State argues that the proper standard of proof for facial challenges requires plaintiffs to demonstrate that Act 1254, under no set of circumstances, is constitutional. Third, and central to this appeal, the State contends that each of the challenged provisions is facially constitutional. We reject each of these contentions.
I. Standard of Review
We review the district court’s decision to permanently enjoin Act 1254 for an abuse of discretion. North Alamo Water Supply Corp. v. City of San Juan, 90 F.3d 910, 916 (5th Cir.1996). “The district court abuses its discretion if it (1) relies on clearly erroneous factual findings when deciding to grant or deny the permanent injunction, (2) relies on erroneous conclusions of law when deciding to grant or deny the permanent injunction, or (3) misapplies the factual or legal conclusions when fashioning its injunctive relief.” Id. at 916-17. “ ‘The standard of review over the district court’s grant of a permanent injunction must, of course, be segmented according to the component functions performed by the district court.’ ” Peaches Entertainment Corp. v. Entertainment Repertoire Assocs., Inc., 62 F.3d 690, 693 (5th Cir.1995) (quoting Multnomah Legal Serv. Workers Union v. Legal Serv. Corp., 936 F.2d 1547, 1552 (9th Cir.1991)).
This case comes to us from a grant of summary judgment in favor of the plaintiffs. We review de novo the district court’s entry of summary judgment. TLI, Inc. v. United States, 100 F.3d 424, 425 (5th Cir.1996).
II. Jurisdiction and Standing
The State suggests that there is no “case or controversy” because the state officials named in this lawsuit do not have “the power to enforce private-action court procedures.” As such, the State concludes, the injunction in this case is “hypothetical and meaningless.” We reject these claims. The plaintiffs in this case have standing to assert the claims of those minors who seek abortions by way of a judicial bypass. See Planned Parenthood of Southeastern, Pa. v. Casey, 505 U.S. 833, 842-45, 112 S.Ct. 2791, 2803, 120 L.Ed.2d 674 (1992). And the district court had jurisdiction pursuant to 28 U.S.C. § 1343 because the plaintiffs seek redress for a deprivation of a constitutional right under color of state law.
III.The Standard of Proof for Facial Challenges to Abortion Statutes
The plaintiffs in this case have brought a facial challenge, claiming that Act 1254 on its face violates the Due Process Clause of the Fourteenth Amendment. The Supreme Court has articulated two approaches to proving a statute is facially unconstitutional. In United States v. Salerno, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), the Court held that in a facial challenge, “the challenger must establish that no set of circumstances exists under which the Act would be valid.” Id. at 745, 107 S.Ct. at 2100 (emphasis added). However, in Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), the Court appeared to temper the Salerno standard by suggesting that an abortion law is facially invalid if “in a large fraction of the cases in which [the law] is relevant, it will operate as a substantial obstacle to a woman’s choice to undergo an abortion.” Id. at 895, 112 S.Ct. at 2830 (emphasis added). Plainly, more statutes will survive a facial attack under Salerno than under Casey.
Shortly after Casey was decided, we held in Barnes v. Moore, 970 F.2d 12, 14 n. 2 (5th Cir.), cert. denied, 506 U.S. 1021, 113 S.Ct. 656, 121 L.Ed.2d 582 (1992), that Casey did not overrule Salerno. Since our decision in Barnes, however, no clear consensus among federal courts has emerged regarding the standard for facial challenges in a post-Casey world. Six Justices from the Supreme Court *1103 have expressed their views on this issue, but not in cases receiving a full hearing by the Court. Justices O’Connor, Souter, and Stevens have made it clear that the Casey standard controls in the abortion context. See Janklow v. Planned Parenthood, Sioux Falls Clinic, — U.S. -, -, 116 S.Ct. 1582, 1583, 134 L.Ed.2d 679 (1996) (Stevens, J., mem. respecting denial of certiorari) (“While a facial challenge may be more difficult to mount than an as-applied challenge, the dicta in Salerno ‘does not accurately characterize the standard for deciding facial challenges,’ and ‘neither accurately reflects the Court’s practice with respect to facial challenges, nor is it consistent with a wide array of legal principles.’ ’’(quoting Michael C. Dorf, Facial Challenges to State and Federal Statutes, 46 Stan. L. Rev. 235, 236, 238 (1994)); Fargo Women’s Health Organization v. Schafer, 507 U.S. 1013, 1014, 113 S.Ct. 1668, 1669, 123 L.Ed.2d 285 (1993) (O’Connor, J., joined by Souter, J., cone, in denial of stay pending appeal) (stating that lower courts’ application of Salerno standard “is inconsistent with Casey ”). On the other hand, Chief Justice Rehnquist and Justices Scalia and Thomas have stated that the Salerno standard applies in the abortion context. See Janklow, — U.S. at - - -, 116 S.Ct. at 1584-87 (Scalia, J., joined by Rehnquist, C.J. & Thomas, J., dissenting from denial of certiorari). There is also considerable disagreement among the lower federal courts on this issue.[4] See generally Ruth Burdick, Note, The Casey Undue Burden Standard: Problems Predicted and Encountered* and the Split Over the Salerno Test, 23 Hastings Const. L.Q. 825 (1996) (arguing that lower federal courts are likely to remain split over the Salemo-Casey choice).
The district court avoided this thicket of disagreement, reasoning that under either approach, Act 1254 was unconstitutional. 905 F.Supp. at 363 n. 2. As such, the district court applied the more rigorous Salerno standard. Id. at 363. In this appeal, both parties urge us to confront head-on the question of the standard of proof that should govern facial challenges in abortion eases. Specifically, the plaintiffs claim that the statements made by Justices O’Connor and Souter in Fargo Women’s Health Organization v. Schafer, 507 U.S. at 1014, 113 S.Ct. at 1669, and by Justice Stevens in Janklow call into doubt our prior holding in Barnes. On the other hand, the State asks us to follow our previous decision in Barnes because the Supreme Court has not conclusively resolved the confusion in this area.
We are free to reconsider the correctness of a panel opinion, short of the full court sitting en bane, if the Supreme Court has handed down an intervening decision that implicitly or explicitly overrules one of our prior decisions. See Federal Deposit Ins. Corp. v. Dawson, 4 F.3d 1303, 1307 (5th Cir.1993), cert. denied, 512 U.S. 1205, 114 S.Ct. 2673, 129 L.Ed.2d 809 (1994); Campbell v. Sonat Offshore Drilling, Inc., 979 F.2d 1115, 1121 n. 8 (5th Cir.1992). However, we have not held that intermittent statements accompanying denials of certiorari or denials of stays pending appeal amount to an intervening change in the law. The Supreme Court itself has said that “all opinions dissenting from the denial of certiorari” are “totally unnecessary” and “examples of the purest form of dicta.” Singleton v. Commissioner, 439 U.S. 940, 944-45, 99 S.Ct. 335, 338, 58 L.Ed.2d 335 (1978) (Stevens, J., respecting the denial of certiorari). Accordingly, for a panel of this court to overrule a prior decision, we have required a Supreme Court decision that has been fully heard by the Court and establishes a rule of law inconsistent with our own. See United States v. Kirk, 528 F.2d 1057, 1063-64 (5th Cir.1976) (holding that, two-member concurrence was insufficient as an indicator that the Court “expressly or implicitly” overruled one of our prior decisions). The wisdom of this policy is *1104 illustrated here. As far as we can tell, the Court appears to be divided 8-3 on the Salerno-Casey debate, and it would be ill-advised for us to assume that the Court will abandon Salerno because three members of the Court now desire that result.[5]
More to the point, even assuming the statements in Fargo and Janklow amount to an intervening change in the law such that we may decline to follow Barnes, we nevertheless stay our hand on this contentious issue because its resolution is not necessary to the disposition of this case, for whether viewed under Casey or Salerno, Act 1254 is unconstitutional on its face.[6] Thus, like the district court, we apply the more rigorous Salerno standard to Act 1254.
IV. The Constitutionality of Act 1254
We now turn to the heart of this appeal— whether Act 1254 comports with the Due Process Clause of the Fourteenth Amendment. We begin with a brief summary of the principles that have shaped this area and guide our decision today.
After the Supreme Court declared in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) that women have a constitutional right to an abortion, the issue of where minors fit into the constitutional picture was soon addressed by the Court. Thus, in Planned Parenthood of Central Missouri v. Danforth, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976), the Court held that a parental or legal guardian veto of a minor’s choice to have an abortion was unconstitutional. Id. at 74-75, 96 S.Ct. at 2843-44. “Constitutional rights,” reasoned the Danforth Court, “do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess constitutional rights.” Id. The Court also noted, however, that “the State has somewhat broader authority to regulate the activities of children than adults.” Id. at 74, 96 S.Ct. at 2843.
Just how far a State can go in restricting a minor’s access to abortion was sketched three years later in the seminal decision of Bellotti v. Baird, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (Bellotti II) (plurality opinion). There, the Court was faced with a challenge to a Massachusetts statute which required a minor under the age of eighteen to obtain parental consent before an abortion could be performed, but if such consent was not given, “‘consent may be obtained by order of a judge of the superior court for good cause shown.’ ” Id. at 625, 99 S.Ct. at 3039 (emphasis added). The Massachusetts Supreme Court had interpreted this judicial bypass provision to mean that a minor could not obtain a court order without any parental consent whatsoever. Id. at 646, 99 S.Ct. at 3049-50. Thus, in Bellotti II, the Court had to determine whether this bypass procedure satisfied the Constitution.
The Court held that it did not. The Court first recognized that parental consent statutes must “provide an alternative procedure” in the event the minor is unable to secure one or both parents’ consent. Id. at 643, 99 S.Ct. at 3048. Turning next to the Massachusetts bypass provision, the Court concluded that Massachusetts’s judicial bypass procedure “would impose an undue burden upon the exercise by minors of the right to seek an abortion.” Id. at 647, 99 S.Ct. at 3050. In reaching this conclusion, the Court presented the competing considerations underlying a minor’s choice to terminate her pregnancy. The Court recognized that minors are vulnerable, less able than adults to make informed and mature decisions, and that parents play a central role in childrearing. Id. at 634, 99 S.Ct. at 3043. Balanced against *1105 these concerns, the Court noted, are the battle lines that often develop in families in which one or both parents have strong views about abortion — battle lines that prevent minors from obtaining abortions. Id. at 647, 99 S.Ct. at 3050. With these considerations in mind, the Court specified four constitutional requirements that must be built into parental consent statutes. The Court wrote:
A pregnant minor is entitled in such a proceeding to show either: (1) that she is mature enough and well enough informed to make her abortion decision, in consultation with her physician, independently of her parents’ wishes; or (2) that even if she is not able to make this decision independently, the desired abortion would be in her best interests. The proceeding in which this showing is made must assure that a resolution of the issue, and any appeals that may follow, will be completed with [3] anonymity and [4] sufficient expedition to provide an effective opportunity for an abortion to be obtained.
Id. at 643-44, 99 S.Ct. at 3048 (footnote omitted); see also Ohio v. Akron Center for Reproductive Health, 497 U.S. 502, 511-14, 110 S.Ct. 2972, 2979-81, 111 L.Ed.2d 405 (1990) (Akron II) (presenting the four Bellotti II requirements). If the minor demonstrates that she is mature, well-informed, or that the abortion would be in her best interest, the Bellotti II Court held that the bypass decisionmaker “must” authorize the abortion. Bellotti II, 443 U.S. at 647, 648, 99 S.Ct. at 3050, 3050-51 (emphasis added). Because Massachusetts’s bypass procedure did not comport with these requirements, the Court declared the statute unconstitutional. Id. at 647-48, 99 S.Ct. at 3050-51.
Since Bellotti II, lower federal courts have come to the unanimous conclusion that once a minor satisfies the maturity criteria or the best-interest test, bypass decisionmakers must order an abortion. We took the lead in Scheinberg v. Smith, 659 F.2d 476 (5th Cir. Unit B Oct.1981), overruled on other grounds in Casey, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674, where we held that abstention was inappropriate because a Florida bypass procedure presented federal constitutional issues. Id. at 481. The relevant statute provided that a court “may” order a minor to have an abortion if she demonstrates that she is sufficiently mature. Id. at 478 (quoting Fla. Stat. Ann. § 390.001(4)(a) (West 1981)). In reaching the conclusion that we should not abstain, we reasoned:
The language of Bellotti II is not permissive: “[i]f [the minor] satisfies the court that she is mature and well enough informed to make intelligently the abortion decision on her own, the court must authorize her to act ... ” [Citation.] Thus, whether permissive or mandatory, subsection 4(a) vests Florida courts with constitutionally impermissible discretion to ignore a minor’s maturity in determining whether to authorize her abortion.
Id. at 481 (original emphasis). Other Circuits have read Bellotti II in the same way.[7]
Bellotti II, of course, did not answer all of the questions surrounding minors’ access to abortion. In fact, the fate of Bellotti II was at first unclear because it was decided by a plurality of the Court. Since then, however, the Court has held that Bellotti II is controlling precedent, see Lambert v. Wicklund, — U.S. -, - - -, 117 S.Ct. 1169, 1170-71, — L.Ed.2d - (1997) (Per Curiam); Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833, 898-900, 112 S.Ct. 2791, 2832, 120 L.Ed.2d 674 (1992); City of Akron v. Akron Ctr. for Reproductive Health, 462 U.S. 416, 439-40, 103 S.Ct. 2481, 2497-98, 76 L.Ed.2d 687 (1983) (Akron I), and we have not thought otherwise, Barnes v. Mississippi 992 F.2d 1335, 1338-39 (5th Cir.1993); *1106 Scheinberg v. Smith, 659 F.2d 476, 480-81 (5th Cir. Unit B Oct.1981).[8] The Court has also suggested that absolute anonymity is not required in bypass proceedings. See Akron II, 497 U.S. at 513, 110 S.Ct. at 2980.
With these background principles in mind, we turn next to the specific provisions of Act 1254 to determine whether they comport with Bellotti II and its progeny.
A The Constitutionality of La. R.S. 1,0:1299.35.5(B) (1/.) & (6)
Act 1254 changes Louisiana’s judicial bypass procedure so that a minor who demonstrates that she is mature, well-informed, or that an abortion would be in her best interest, “may” receive judicial authorization for the abortion. La. R.S. 40:1299.35.5(B)(4), (6). In addition, Act 1254 sets up a state-sponsored “evaluation and counseling” scheme to which a minor may be referred within forty-eight hours of a hearing before the juvenile court. La. R.S. 40:1299.35.5(B)(4). The plaintiffs challenge (B)(4) and (6). on two grounds. First, the plaintiffs claim that (B)(4) and (6) violate the Bellotti II principle that mature and well-informed minors and those for whom an abortion is in their best interest must receive judicial authorization to have an abortion. Second, the plaintiffs claim that (B)(4)’s requirement that minors receive counseling from state health and social services agencies violates the Bellotti II principle that bypass proceedings are to proceed expeditiously. The district court agreed with the plaintiffs on both issues. We discuss each of these holdings in turn.

1. “Shall” versus “May” in § 1299.35.5(B) (f) and (6)

The 1981 version of § 1299.35.5(B) provided that if a minor demonstrates that she is either mature and well-informed or that the abortion would be in her best interest, the juvenile court “shall” order an abortion. La. R.S. 40:1299.35.5(B)(4), (5) (West 1992).. As we noted above, this language appeared in Louisiana’s judicial bypass statute because of the Supreme Court’s decision in Bellotti II, which rendered the 1978 version of § 1299.35.5(B) unconstitutional. See Margaret S.(I), 488 F.Supp. at 203. And with, among other things, the addition of the mandatory “shall” language, the 1981 version of § 1299.35.5(B) survived a constitutional challenge. Margaret S.(II), 597 F.Supp. at 650-52.
Against this legislative backdrop, the district court declared § 1299.35.5(B)(4) and (6) unconstitutional. The court looked to the common meaning of the terms “shall” and “may” and concluded that the Louisiana Legislature intended a change in the statutory framework governing the judicial bypass procedure. “[T]he clear intent of the statutory amendment,” reasoned the district court, “was to grant the substantive power of discretion to the judges of this state that is directly contrary to the rulings of the Supreme Court in Casey, Akron II and Bellotti II.” 905 F.Supp. at 364.
The State in its briefs and at oral argument strenuously asserts that § 1299.35.5(B)(4) and (6) is constitutional because (1) the change from “shall” to “may” does not confer discretion on juvenile court judges to deny a minor an abortion if the minor is mature and well-informed or if the abortion is in the minor’s best interest; and (2) subsections (B)(4) and (6) are procedural in nature and therefore do not contradict the substantive federal law in this area. Neither of these arguments is persuasive.
We reject the State’s contention that the change from “shall” to “may” does not confer discretion on juvenile court judges. We note by way of illustration that with one partial exception,[9] Louisiana stands alone on this *1107 front: As far as we are aware, every state with a parental consent or notification statute has used the mandatory “shall” language in their bypass schemes.[10] The State’s argument that subsections (4) and (6) pass constitutional muster takes one of two forms. First, the word change does not on its face give juvenile courts the discretion to deny a minor an abortion if the minor shows that she is mature, well-informed, or that the abortion would be in her best interest; or, alternatively, even though the statute on its face states that a juvenile court judge “may” order an abortion if the Bellotti II requirements are met, we should not assume that juvenile court judges will not order an abortion in violation of Bellotti II.
The State itself sows the seeds for rejecting the claim that “shall” ostensibly carries the same meaning as “may.” In its briefs and at oral argument, the State claims that in determining the constitutionality of § 1299.35.5(B), we should follow Louisiana’s rules of statutory construction. When we consider the constitutionality of state statutes, we look to the rules of statutory construction of the state, see, e.g., Leavitt v. Jane, — U.S. -, - - -, 116 S.Ct. 2068, 2069-72, 135 L.Ed.2d 443 (1996) (per curiam); Barnes v. Mississippi, 992 F.2d at 1341-42, mindful of the principle that we should avoid “federal-court nullification of state law,” Leavitt, — U.S. at -, 116 S.Ct. at 2072, and “[wjhere fairly possible, ... construe a statute to avoid a danger of uneonstitutionality,” Ashcroft, 462 U.S. at 493, 103 S.Ct. at 2526; Akron II, 497 U.S. at 514, 110 S.Ct. at 2980-81.
Under Louisiana law, “the paramount consideration for statutory interpretation is the ascertainment of the legislative intent and the reason or reasons which prompted the legislature to enact the law.” Fontenot v. Chevron, U.S.A., Inc., 676 So.2d 557, 562 (La.1996). In searching for the legislative intent behind subsections (4) and (6), we begin with Article 9 of the Louisiana Civil Code, which provides:
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
La. C.C. art. 9 (West 1996); Tucker v. Fowler, 668 So.2d 718, 719 (La.1996); Marine Marketing Servs., Inc. v. Louisiana Dep’t of Ins., 673 So.2d 335, 338 (La.Ct.App. 1st Cir.1996) (holding that it was reversible error for trial court to look to statutory intent when the language of the statute was neither ambiguous nor produced absurd consequences). “When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.” La. R.S. 1:4 (West 1996); Sumrall v. Luhr Bros., 665 So.2d 796, 800 (La.Ct.App. 1st Cir.1995), writ denied, 669 So.2d 425 (La.1996).
Thus, when determining the Louisiana Legislature’s intent behind subsections (4) and (6), we may only go beyond the plain *1108 terms of § 1299.35.5(B)(4) and (6) if the statute on its face is unclear or ambiguous or if application of the terms of subsections (4) and (6) produces “absurd consequences.” We have found no decisions from the Louisiana courts interpreting the meaning of subsections (B)(4) and (6), no decisions interpreting the pertinent provisions of the 1981 version of § 1299.35.5(B), and no legislative history explaining the 1995 change from “shall” to “may.” We therefore apply Louisiana’s principles of statutory construction to § 1299.35.5(B)(4) and (6).
We hold that § 1299.35.5(B)(4) and (6) plainly violates Bellotbi II. As such, the statute is neither unclear nor ambiguous, nor does application of its plain terms produce absurd results. La. R.S. 1:3 (West 1996) provides:
§ 3. Words and phrases; how construed Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and' phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.

The word “shall” is mandatory and the Word “may” is permissive.

(emphasis added); see also La. C.C. art. 11 (West 1996) (“The words of a law must be given their generally prevailing meaning.”); Backhus v. Transit Cas. Co., 549 So.2d 283, 289 (La.1989) (same). We can imagine no more clear indication that § 1299.35.5(B)(4) and (6) on its face provides juvenile court judges discretion to deny an abortion to a minor who has met the Bellotti II requirements. The basic guide for interpreting Louisiana statutes states in unmistakably clear terms that “shall” means “mandatory” and that “may” means “permissive.” Moreover, the common usage of the term “permissive” is “[ajllowed; allowable; that which may be done[;][l]enient; tolerant.” Black’s Law DICTIONARY at 1140 (6th ed.1990); Sum-rail, 665 So.2d at 800 (looking to Black’s Law Dictionary for common and approved usage). Thus, the plain language of § 1299.35.5(B)(4) and (6) states that juvenile court judges within Louisiana have the discretion to deny an abortion to a minor even though the minor demonstrates that she is mature, well-informed, or that the abortion would be in her best interest. This flies in the face of Bellotti II and its progeny.
Our reading of the statute does not produce absurd consequences. We have done nothing more than apply the meaning of “may” and “shall” that exists in La. R.S. 1:3 to a statute that is neither unclear nor ambiguous on its face. Louisiana courts have not declared that this sort of bread-and-butter interpretation of statutes produces “absurd consequences.” Compare Breaux v. Hoffpauir, 674 So.2d 234, 236 (La.1996) (holding that interpretation of Louisiana statute would lead to absurd consequence because state definition of “actual wages” would be illegal under federal statute); Washington-St. Tammany Electrical Coop., Inc. v. Louisiana Pub. Serv. Comm’n, 671 So.2d 908, 914 (La.1996) (absurd consequence results when interpretation contravenes the purposes of the statute).
The State would have us read § 1299.35.5(B) differently. They claim that § 1299.35.5(B) “provides only the procedural means needed for Louisiana state judges to apply the federal substantive principles in this area of law to individual cases in order to issue judgments in accordance with such substantive principles.” Because, argues the State, § 1299.35.5(B) is a procedural statute, we must liberally construe the statute to effectuate its overall purposes. Second, the State points to the Louisiana Supreme Court’s decision in Rathborne Lumber & Supply Co. v. Falgout, 218 La. 629, 50 So.2d 295 (1950), in which the court stated in dictum: “[Ajlthough words of a statute are permissive, ... sometimes they may require an interpretation giving them mandatory effect ... where the context or subject matter compels such construction or where it is necessary to carry out the clear policy and intention of the Legislature.” Id. at 635, 50 So.2d 295; accord Romero v. Stephens, 359 So.2d 1061, 1065 (La.Ct.App.3d Cir.1978); Gurtler, Hebert & Co. v. Marquette Casualty Co., 145 So.2d 145, 147-48 (La.Ct.App. 4th Cir.1962). But see Hornsby v. Fidelity Nat’l Bank of *1109 Baton Rouge, 243 So.2d 96, 98 (La.Ct.App. 1st Cir.1971) (declining to follow Falgout, adhering to La. R.S. 1:3, and interpreting “may” and “shall” to mean “permissive” and “mandatory,” respectively). Thus, concludes the State, we should follow Falgout in this case and effectuate the intent of the Louisiana Legislature as expressed in § 1299.35.0 — “It is the intention of the Legislature of the State of Louisiana to regulate abortion to the extent permitted by decisions of the United States Supreme Court.” We reject both arguments.
For us to accept the State’s claim that Act 1254 is a procedural statute that merely effectuates the substantive federal law in this area, we would have to conclude that the legislature did not in 1995 intend to change § 1299.35.5(B). In other words, we would have to hold that the change from “shall” to “may” has no bearing on the constitutionality of Act 1254 because Act 1254 does not materially change the 1981 version of § 1299.35.5(B). We cannot accept the State’s proposition that Act 1254 does not change the law. First, we would in effect be interpreting the statute so that “may” means “shall,” an interpretation that would be flatly inconsistent with the definition of those terms in La. R.S. 1:3. Second, we would be ignoring the Louisiana Supreme Court’s understanding of statutory changes. The court has said: “The legislature is presumed to have enacted a statute in light of the preceding statutes involving the same subject matter and court decisions construing those statutes, and where the new statute is worded differently from the preceding statute, the legislature is presumed to have intended to change the law.” New Orleans Rosenbush Claims Serv., Inc. v. City of New Orleans, 653 So.2d 538, 544 (La.1995) (emphasis added). Nothing the State has said in their briefs or at oral argument persuades us that Act 1254 does not materially change the judicial bypass procedure in Louisiana.
Perhaps the most basic flaw in the State’s arguments is the assumption that we must go beyond the plain meaning of § 1299.35.5(B)(4) and (6). We decline to do so because, as we have said, the language of subsections (4) and (6) is clear, unambiguous, and does not produce absurd consequences. The State points us to no authority, and we perceive none, suggesting that procedural statutes are immune from Article 9’s clear mandate. In addition, the State fails to provide any authority, and again we perceive none, for the proposition that Falgout is an exception to Article 9’s statutory construction principle.
Finally, the State argues that' if we interpret § 1299.5.5(B)(4) and (6) to mean that juvenile court judges have the discretion to deny an abortion to a minor that meets the Bellotti II requirements, we would be indulging the inappropriate assumption that Louisiana judges will decline to follow the federal Constitution. We agree with the State that we should refrain from assuming that state actors will violate the law. “[T]he Fifth Circuit is not,” as we have recognized, “a ‘roving commission[] assigned to pass judgment on the validity of the Nation’s laws.’ ” Barnes v. Mississippi, 992 F.2d at 1342 (quoting Broadrick v. Oklahoma, 413 U.S. 601, 610-11, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973)).
However, we make no such assumption here. We have held that § 1299.35.5(B)(4) and (6) on its face is inconsistent with Bellotti II and its progeny because it invests juvenile court judges with the discretion to deny a minor an abortion even though she satisfies the Bellotti II requirements. As such, this case is plainly distinguishable from our decision in Barnes v. Mississippi, 992 F.2d 1335. There, the plaintiffs brought a facial challenge against a rule promulgated by the Mississippi Supreme Court pursuant to a bypass statute that did not on its face conflict with Bellotti II. Id. at 1337-41. The Mississippi statute notably provided that if a minor demonstrates that she is mature and well-informed or that the abortion would be in her best interest, the court must order the abortion. Id. at 1342 n. 4. The procedural rule challenged by the plaintiffs, although it was worded differently than the language in Bellotti II, did not on its face conflict with the statute. Id. at 1341 (“[T]he rule requires a minor to plead that notifying her parents of the abortion is not in her best interest.”). Accordingly, we rejected the challenge to the *1110 Mississippi Supreme Court’s procedural rule on the ground that “[i]f a Mississippi court does follow [the procedural rule] so as to conflict with Bellotti, a plaintiff will be free to launch an as-applied challenge to the bypass procedure.” Id. at 1342.
Here, we face an entirely different situation. Juvenile court judges within Louisiana have a legislatively prescribed choice whether to order an abortion for a minor who is mature, well-informed, or for whom an abortion would be in her best interest. It is this discretion itself, and not the exercise of it, that we find inconsistent with Bellotti II.
In short, § 1299.35.5(B)(4) and (6) is unconstitutional. We affirm the district court’s decision to permanently enjoin these provisions of Act 1254.

2. Expeditiousness in § 1299.35.5(B)(3) and (I)

Section 1299.35.5(B)(3) provides that “[e]aeh application shall be heard in chambers, anonymously, in a summary manner, and within forty-eight hours of the filing thereof.” Except for the admonition that the hearing proceed in a “summary manner,” subsection (B)(3) on its face does not provide a specific time frame for deciding the merits of a minor’s application. Section 1299.35.5(B)(4) provides that a juvenile court may require a minor to attend various state-sponsored evaluation and counseling sessions within forty-eight hours of the ex parte hearing with the juvenile court judge. Subsection (B)(4), like subsection (3), does not on its face provide a time frame within which that evaluation is to be completed and the results forwarded to the court. Nor does subsection (4) contain the “summary manner” language found in subsection (3).
The plaintiffs claim that § 1299.35.5(B)(3) and (4) violates the Bellotti II requirement that bypass procedures proceed expeditiously because both subsections provide an indefinite time period for the juvenile court judge to decide the merits of the minor’s application. The district court agreed with the plaintiffs that subsections (B)(3) and (4) did not meet the Bellotti II requirement for expeditious resolution of bypass applications. 905 F.Supp. at 365.[11] On appeal, the State argues that the district court erred in reaching this conclusion because the statute requires juvenile court judges to conduct the proceedings in a “summary manner,” and to hold that this provision violates Bellotti II, we “would have to assume that a state district judge would intentionally ignore the requirements of state law and the dictates of the United States Supreme Court.”
We agree with the district court that subsections (B)(3) and (4) are inconsistent with Bellotti II because they do not provide for an expeditious resolution of the minor’s bypass application. We again frame our analysis in accord with Louisiana’s rules of statutory construction and determine whether proceeding in a “summary manner” satisfies Bellotti II’s expedition requirement. Louisiana Civil Code article 2595 (West 1996) provides that in a summary proceeding, “[t]he court shall render its decision as soon as practicable after the conclusion of the trial of a summary proceeding and, whenever practicable, without taking the matter under advisement.” (Emphasis added).
Such an open-ended bypass procedure has never been approved. We should not, as the Supreme Court has suggested, “invalidate! ] [a bypass] statute on a facial challenge based upon a worst-case analysis that may never occur.” Akron II, 497 U.S. at 514, 110 S.Ct. at 2981. The Supreme Court has held that a seventeen- and twenty-two-day delay satisfies Bellotti II. Akron II, 497 U.S. at 514, 110 S.Ct. at 2980-81 (22 days); Ashcroft, 462 U.S. at 479 n. 4, 491 n. 16, 103 S.Ct. at 2519 n. 4, 2525 n. 16 (17 days). An indefinite period, however, has been rejected. In Glick *1111 v. McKay, 987 F.2d 434 (9th Cir.1991),[12] the Ninth Circuit determined the constitutionality of the bypass procedure in Nevada’s parental notification statute. Like Louisiana’s bypass procedure, Nevada’s statute did not on its face provide a time frame within which a minor’s bypass application was to be decided. Id. at 438, The Ninth Circuit struck down the statute as inconsistent with Bellotti 11. “Under the statute,” reasoned the court, “the district court could ... delay the bypass procedure indefinitely. The district court review procedure does not meet the Bellotti expediency criterion.” Id. at 440-41; see also id. at 441 n. 4 (stating that “an indefinite period does not” satisfy Bellotti II).
Subsections (B)(3) and (4) plainly conflict with Bellotti II because the juvenile court is not required to rule on the minor’s application within any specified time nor are state counselors required to report back to the juvenile court within any specified time. We hold that “whenever practicable” does not satisfy constitutional standards of expediency. There is no fall-back (or constructive authorization) provision within subsection (3) that deems a minor’s application granted in the event the juvenile court does not act within a particular time frame. Thus, not only do subsections (3) and (4) fail to provide any specific time within which a minor’s application will be decided, but they give no assurances (assurances required by Bellotti II) that the proceedings will conclude expeditiously.
The State attempts to rescue subsection (3) by pointing to Article 2591 (West 1961) of the Louisiana Civil Code, which provides: “Summary proceedings are those which are conducted with rapidity, within the delays allowed by the court, and without citation and the observance of all the formalities required in ordinary proceedings.” (Emphasis added). Plainly, the “rapidity” language refers to the expeditiousness of the summary proceeding itself, not to the time a judge has to decide the merits of a case. We inevitably return to article 2595 which does, as we have said, prescribe the time frame within which a decision in a summary proceeding is to be rendered — “as soon as practicable.” This is insufficient under Bellotti II.
Finally, contrary to the State’s contention, we do not portray Louisiana juvenile court judges or state-employed counselors as individuals who would intentionally violate Bellotti II, nor are we analyzing the constitutionality of subsections (B)(3) and (4) under a worst-case scenario. We have simply looked to the plain terms of § 1299.35.5(B)(3) and (4) to determine the rules juvenile court judges are required to follow when presented with a bypass application from a minor. The Louisiana Legislature has told them that they must rule on the application “as soon as” or “whenever practicable.” This violates Bellotti II’s expedition requirement on its face. We therefore affirm the district court’s decision to permanently enjoin subsections (3) and (4).

B. The Constitutionality of La. R.S. 4.0:1299.35.5(B)(5)

Section 1299.35.5(B)(5) provides, among other things, that the juvenile court “shah” notify the parent(s) or legal guardian if the court determines that such notification is in the minor’s best interest. The plaintiffs contend, and the district court agreed, that § 1299.35.5(B)(5) does not satisfy Bellotti II’s anonymity requirement. The State, on the other hand, contends that § 1299.35.5(B)(5) comports with Bellotti II. The State relies on the following language in Bellotti II for this conclusion:
[T]he court may deny the abortion request of an immature minor in the absence of parental consultation if it concludes that her best interests would be served thereby, or the court may in such a case defer decision until there is parental consultation in which the court may participate.
Bellotti II, 443 U.S. at 648, 99 S.Ct. at 3050-51 (emphasis added). From this statement, the State argues that the Bellotti II Court *1112 “seem[ed] to encourage [parental notification], if the courts believe to do so is in the minors [sic ] best interest.” We agree with the district court and conclude that the State is mistaken.
As the plaintiffs and the district court correctly note, this language from Bellotti II in no way permits the independent bypass decisionmaker to contact a minor’s parents, inform them that their minor daughter is seeking an abortion without their consent, and then ask the parents to participate in the process of deciding whether the abortion would be in the minor’s best interest. We read the statement from Bellotti II to mean that a Louisiana juvenile court can refuse to authorize a minor’s abortion if parental notification is in the minor’s best interest, or the court may wait until the minor herself seeks parental consultation, and then, with both the parents’ and minor’s input, determine whether an abortion is in the minor’s best interest.
Any other interpretation of this language — or shall we say, the State’s interpretation — would cut the core out of Bellotti II. If Bellotti II means anything, it surely means that States seeking to regulate minors’ access to abortion must offer a credible bypass procedure, independent of parents or legal guardians, in a parental consent statute like the one in Louisiana. Plainly, the State has attempted to enter through the proverbial back door by suggesting that the “best-interest-of-the-minor” inquiry cannot arbitrarily exclude the input of parents or a legal guardian. Although the Supreme Court has recognized that bypass decisionmakers can consider whether parental notification would be in the best interest of the minor, Bellotti II, 443 U.S. at 640, 99 S.Ct. at 3046-47, and that complete anonymity is not required, Akron II, 497 U.S. at 513, 110 S.Ct. at 2980, the Court has not held that anonymity may give way to parental notification in bypass statutes.
The Supreme Court’s decision in H.L. v. Matheson, 450 U.S. 398, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981) is not to the contrary. There, the Court upheld a parental notification provision, reasoning that “a statute setting out a ‘mere requirement of parental notice’ does not violate the constitutional rights of an immature, dependent minor.” Id. at 409, 101 S.Ct. at 1171. Because the Court has yet to address the question of whether a bypass procedure is required for parental notification statutes, we do not read Matheson to hold that parental notification is an exception to the Bellotti II anonymity requirement. Indeed, if we were to agree with the State that Matheson modified the anonymity requirement in Bellotti II, we would create an exception that swallows the rule. The central thrust of Bellotti II was to ensure that minors who could not or would not seek the consent of a parent or legal guardian have access to a bypass procedure that would ensure anonymity from parents who may “obstruct both an abortion and their access to court.” Bellotti II, 443 U.S. at 647, 99 S.Ct. at 3050. By requiring a juvenile court judge to notify a minor’s parents if the judge finds that doing so would be in the minor’s best interest, Louisiana has undermined the independent bypass procedure prescribed in Bellotti II.
We affirm the district court’s conclusion that subsection (5) of § 1299.35.5(B) is inconsistent with Bellotti II’s anonymity requirement.
CONCLUSION
We do not question Louisiana’s interest in regulating the circumstances under which minors may obtain abortions or its interest in ensuring that minors make an informed choice to have an abortion. The Supreme Court has stressed, as have we, the need to. balance parents’ strong interest in participating in a minor’s upbringing against a minor’s constitutional right to an abortion. Beginning with Bellotti II, the Supreme Court has balanced these competing interests in a manner which mandates our decision today. Accordingly, if the Louisiana Legislature chooses to modify its judicial bypass procedure, it must do so consistent with the teachings of the Supreme Court and our Constitution. We hold that Act 1254 is facially unconstitutional under the Due Process Clause of the Fourteenth Amendment of the Constitution.
*1113 The summary judgment of the district court permanently enjoining Act 1254 is AFFIRMED.
AFFIRMED.

. The district court in Margaret S. (II) stated that the 1981 judicial bypass procedure provided for an "expeditious hearing of the matter...." 597 F.Supp. at 652. As we have noted, however, the word "expeditious!]” was removed from the 1981 statute. The district court did not consider the meaning of "summaiy manner" as defined under Louisiana law to determine whether the new subsection (3) met the Bellotti II expedition requirement.

. Although the plaintiffs challenged and the district court enjoined the expediency provision in subsection (3), that subpart largely remained unchanged in Act 1254. The legislature only changed “confidentially” to "anonymously.” This particular change has not been challenged by the plaintiffs.

. The district court did not rule on the plaintiff's claim that the state-sponsored counseling provision impermissibly breached anonymity. On appeal, the plaintiffs resurrect this argument. We decline to address this claim, however, because it is unnecessary to the disposition of this case. The counseling and evaluation provision is facially unconstitutional for another reason discussed in Part IV.A.2, infra.

. Compare Compassion in Dying v. Washington, 79 F.3d 790, 798 n. 9 (9th Cir.1996) (en banc) (holding that Casey displaced Salerno), cert. granted sub nom. Washington v. Glucksberg, - U.S. -, 117 S.Ct. 37, 135 L.Ed.2d 1128 (1996) and Planned Parenthood, Sioux Falls Clinic v. Miller, 63 F.3d 1452, 1456-58 (8th Cir.1995), cert. denied sub nom. Janklow v. Planned Parenthood, Sioux Falls Clinic, - U.S. -, 116 S.Ct. 1582, 134 L.Ed.2d 679 (1996) (same) and Casey v. Planned Parenthood of Southeastern Pa., 14 F.3d 848, 863 n. 21 (3d Cir.1994) (on remand) (same) with Barnes v. Moore, 970 F.2d at 14 n. 2.

. The Eighth Circuit boldly declared that the Supreme Court in Casey has "effectively overruled Salerno for facial challenges to abortion statutes." Miller, 63 F.3d at 1458. As we have said, we decline to speculate about the outcome of this disagreement among the Justices of the Supreme Court.

. We also respectfully decline, for the reasons stated above, Justice Stevens's invitation to reconsider the wisdom of our decision in Barnes. See Janklow, -U.S. at - n. 2, 116 S.Ct. at 1583 n. 2 (Stevens, J., mem. respecting the denial of certiorari) ("[I]t is not at all clear to me, given intervening statements by Members of this Court, [citation], that subsequent Fifth Circuit panels would follow Barnes ’ application of the ‘no circumstance’ test____”).

. See Planned Parenthood, Sioux Falls Clinic v. Miller, 63 F.3d 1452, 1462 (8th Cir.1995) (“If a minor can demonstrate that she is mature, the State has no legitimate reason for imposing liberty restrictions upon her that it may not impose on an adult.”), cert. denied sub nom. Janklow v. Planned Parenthood, Sioux Falls Clinic, - U.S. -, 116 S.Ct. 1582, 134 L.Ed.2d 679 (1996); Indiana Planned Parenthood v. Pearson, 716 F.2d 1127, 1134 (7th Cir.1983) (“The statute does not — and constitutionally cannot — give the juvenile court the authority to refuse to waive notification despite a finding that the minor is mature.”).

. The State appears to suggest in their brief that Bellotti II has been modified by subsequent decisions of the Supreme Court. However, as our discussion suggests, the Court has never questioned the viability of the four Bellotti II requirements and we decline to do so in this case. ' More importantly, the State backed off this claim at oral argument, where it conceded that Act 1254 must be evaluated under Bellotti II.

. North Dakota appears to be the only other state in which a bypass decisionmaker "may” order an abortion if the Bellotti II requirements are met. N.D. Cent.Code § 14-02.1-03.1(5)(a), • (b)(1)-(3) (1995). To be sure, unlike Louisiana, part of North Dakota’s statutory scheme tracks Bellotti II. For example, if a minor in North Dakota demonstrates that she is mature and well informed, § 14-02.1-03.1(5)(a) provides that *1107 “the court shall issue an order authorizing a competent physician to perform the abortion procedure on the minor.” (Emphasis added.) However, if the minor fails to demonstrate she is mature and well informed, § 14-02.1-03.1(5)(b)(l), (3) provides that the court "may" order an abortion if the court determines that the abortion is nevertheless in the minor’s best interests. On this point, the North Dakota statute is similar to La. R.S. 40:1299.35.5(B)(6).

. See Ala.Code § 26-21-4(0(1), (2) (1996); Ariz. Rev.Stat. Ann. § 36-2152(B) (1996); Ark.Code Ann. § 20-16-804(1)(A), (B) (1995); Cal.Health & Safety Code § 123450(c)(1), (2) (West 1996); 24 Del.Code Ann. § 1784(b) (1995); Ga.Code Ann. § 15-1 1-114(c)(1), (2) (1996); III. Ann. Stat. Ch. 750, para. 70/25(d)(1), (2) (Smith-Hurd 1996); Ind.Code Ann. § 16-34 — 2—4(d) (West 1996); Kan. Stat. Ann. § 65-6705(e)(l), (2) (1995); Ky.Rev. Stat. Ann. § 311.732(4)(a), (b) (Baldwin 1996); 22 Me.Rev.Stat. Ann. § 1597-A(6)(A)(5), (D)(l)-(2) (West 1995); Mich. Comp. Laws Ann. § 722.904(3)(a), (b) (West 1996); Minn.Stat. Ann. § 144.343(6)(c)(i) (West 1996); Miss.Code Ann. § 4i_4i_55(4)(a), (b) (1995); Mo. Ann. Stat. § 188.028(2), (3)(a)-(b) (Vernon 1996); Mont. Code Ann. § 50-20-212(5)(a), (b) (1995); Neb. Rev. Stat. § 71-6903(1) (1995); Nev. Rev'. Stat. § 442.2555(3)(a)-(d), (4) (1995); N.C. Gen. Stat. § 90-21.8(e)(1), (2) (1995); Ohio Rev.Code Ann. § 2151.85(C)(1), (2) (Baldwin 1996); 18 Pa. Cons Stat. Ann. § 3206(c), (d) (1996); R.I. Gen. Laws § 23-4.7-6 (1995); S.C.Code Ann. § 44-41-32(5) (1995); Tenn.Code Ann. § 37-10-304(e)(l), (2) (1996); W. Va.Code § 16-2F-4(f)(l)(2) (1996); Wis. Stat. Ann. § 48.375(7)(c)(l), (2) (West 1996); Wyo. Stat. § 35-6-118(b)(v)(B), (C) (1996).

. The district court stated that "the provisions of Act 1254 amend Section B(4) of the Act to require that the juvenile court hear the bypass application within 48 hours, without any requirement as to when the application must be ruled upon.” 905 F.Supp. at 365 (emphasis added). Our reading of the statute, however, reveals that subsection B(3) provides the forty-eight hour time frame and that the only change made by Act 1254 was to substitute the word "confidentially" with "anonymously.” Act 1254 did not for the first time introduce the forty-eight hour and "summary manner” requirements; both appeared in the 1981 version of § 1299.35.5(B).

. The Supreme Court has disapproved the analysis in Glick, in which the Ninth Circuit held unconstitutional a bypass procedure which allowed a minor to have an abortion if parental notification, and not the abortion itself, was not in the minor’s best interest. Lambert v. Wicklund, - U.S. at - - -, 117 S.Ct. at 1170-73. Nothing in Lambert affects Glick's holding regarding Bellotti II's expediency requirement.