Susan WICKLUND, M.D.,
et al, Plaintiffs,

v.

Martin D. LAMBERT, in his individual capacity and in his official capacity as Gallatin County Attorney, Defendant.

No. CV 93–92–BU–DWM.

United States District Court,
D. Montana,
Butte Division.

Oct. 9, 1997.

shoof, Simon Heller, Center for Productive Law and Policy, New York, NY, for Plaintiffs.

Joseph P. Mazurek, Clay R. Smith, Elizabeth S. Baker, Office of Montana Attorney General, Helena, MT, for Defendant.

# ORDER

MOLLOY, District Judge.

## I. Background

This action is a facial challenge to the constitutionality of Montana's Parental Notice of Abortion Act (Montana Act), Mont. Code Ann. §§ 50–20–201 to –215. The case is here on remand from the Ninth Circuit following the Supreme Court's decision in *Lambert v. Wicklund,* —— U.S. ——, 117 S.Ct. 1169, 137 L.Ed.2d 464 (1997). The order of remand from the Ninth Circuit instructed that the district court "shall consider in particular those contentions raised by plaintiffs that were not addressed by the Supreme Court." [1] Those contentions have been fully briefed by the parties in their cross motions for summary judgment. Plaintiffs argue on three grounds that the Montana Act is unconstitutional on its face:

(1) The Montana Act's judicial bypass procedure is defective because it requires that the minor's parents be notified once the minor files a petition for waiver of parental notice.

(2) The Montana Act mandates constructive notice to the parents of abused minors.

(3) The Montana Act violates the Equal Protection Clause because it applies only to female minors.

## II Discussion

### A. Standard of Review

■ The standard of review for a facial challenge to the constitutionality of a statute is uncertain. *See Manning v. Hunt,* 119 F.3d 254, 260 & n. 2 (4th Cir.1997) (discussing circuit split and comparing standard for facial challenge under *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), which requires a showing that

Bruce A. Measure, Law Offices of Ambrose G. Measure, Kalispell, MT, Janet Ben-

---

1. The Honorable James F. Battin, the District Judge who decided the original case, died in 1996. The case was then assigned to the Honorable Donald W. Molloy for disposition.

"*under no set of circumstances* can the Act be applied in a manner which is not an undue burden on an unemancipated pregnant minor's right to obtain an abortion", with the lesser standard under *Planned Parenthood v. Casey,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), which requires a showing that "*in a large fraction of cases in which it is relevant* [the Montana Act] will operate as a substantial obstacle to a woman's choice to undergo an abortion").

The Ninth Circuit applies the *Casey* standard. *See Compassion in Dying v. Washington,* 79 F.3d 790, 798 n. 9 (9th Cir.1996) (en banc) (upholding a constitutional challenge by three terminally-ill patients to state statute prohibiting assisted suicide). Although the Supreme Court reversed the Ninth Circuit *sub nom.* in *Washington v. Glucksberg,* —— U.S. ——, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997), the Court noted but did not otherwise comment upon the fact that the district court had applied the *Casey* as opposed to the *Salerno* standard. *Id.* at —— n. 5, 117 S.Ct. at 2262 n. 5. Thus, I apply the *Casey* standard of review to the facial challenge at bar.

**B. The *Bellotti* Framework**

 The Supreme Court has adopted the criteria discussed by a plurality of the Court in *Bellotti v. Baird,* 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979), as the appropriate test for the constitutionality of a bypass procedure in a parental consent to abortion statute. To satisfy the *Bellotti* standard, the bypass procedure must:

(1) allow the minor to show that she possesses the maturity and information to make her abortion decision, in consultation with her physician, without regard to her parent's wishes;

(2) allow the minor to show that, even if she cannot make the abortion decision by herself, 'the desired abortion would be in her best interests';

(3) insure the minor's anonymity; and,

(4) be conducted "with expedition to allow the minor an effective opportunity to obtain the abortion."

*Ohio v. Akron Center for Reproductive Health (Akron II),* 497 U.S. 502, 511–13, 110 S.Ct. 2972, 2979–80, 111 L.Ed.2d 405 (1990) (citing *Bellotti* ). Here, plaintiffs argue that the Montana bypass procedure fails the third prong of the *Bellotti* test because it does not insure the anonymity of the minor.

In *Akron II,* the Court found that the bypass procedure in the challenged Ohio statute met the third prong of the *Bellotti* standard. The Ohio statute stated that "[e]ach hearing under this section shall be conducted in a manner that will preserve the anonymity of the complainant. The complaint and all other papers and records that pertain to an action commenced under this section shall be kept confidential and are not public records." *Akron,* 497 U.S. at 512, 110 S.Ct. at 2979.

By comparison, the Montana Act states that "[p]roceedings under this section are confidential and must ensure the anonymity of the petitioner. All proceedings under this section must be sealed. The petitioner may file the petition using a pseudonym or using the petitioner's initials. All documents related to the petition are confidential and are not available to the public."

The Montana Act's provisions on preserving privacy, confidentiality, and anonymity appear to be even stronger than those upheld in *Akron II.* The Court upheld the statute in *Akron II* because it took "reasonable steps to prevent the public from learning of the minor's identity." 497 U.S. at 513, 110 S.Ct. at 2980. Additionally, the court cautioned that "[w]here fairly possible, courts should construe a statute to avoid the danger of unconstitutionality." *Id.* at 514, 110 S.Ct. at 2980.[2]

Nonetheless, plaintiffs argue that their facial challenge to the Montana Act should be upheld. They insist that the Act's bypass

---

**2.** It is still unsettled whether parental notice statutes even need to include a bypass procedure to pass constitutional muster. *See Akron II,* 497 U.S. at 510, 110 S.Ct. at 2978–79 ("although our cases have required bypass procedures for parental *consent* statutes, we have not yet decided whether parental *notice* statutes must contain such procedures") (emphasis added). The Court decided that it need not reach that issue because the bypass procedure for the challenged parental notice statute met the *Bellotti* standard for consent statutes. *Id.* This court is similarly persuaded that the Montana bypass procedure passes the *Bellotti* test. *See* discussion, *infra.*

procedure does not insure the anonymity of the minor because its provisions are undermined by other aspects of the Montana Youth court Act.

## C. Facial Challenges to the Montana Act

### 1. The Judicial Bypass is defective

■ The Montana Act's judicial bypass procedure is triggered by a petition to the youth court. Mont.Code Ann. § 50–20–212(2)(a). Because the process starts here, Plaintiffs argue that the general provisions of the Youth Court then govern. Those provisions include serving the minor's parents with a summons, Mont.Code Ann. § 41–5–502(1)(b), and disclosure of Youth Court records prior to their being sealed, Mont.Code Ann. § 41–5–603. Thus, say plaintiffs, the Montana Act does not protect the minor's confidentiality.

The state argues that the confidentiality requirements of the judicial bypass procedures operate independently to the Youth Court provisions. In defendant's view, it would be a strained construction of the statutes to find that provisions designed to govern regular Youth Court proceedings now control the specific provisions of the bypass procedure.

The state's argument is much more persuasive. The plain language of the Montana Act's bypass provision expresses a clear legislative intent to protect the confidentiality of the proceedings thereunder. Plaintiffs cite language from *Akron II* for the proposition that the Montana Act is defective because it "contains no specific instruction to the Youth Court directing it not to follow its usual procedure of serving the minor's parents with a summons." Pls' Br. at 9, (quoting *Akron II*).

As noted above, the confidentiality and anonymity provisions of the Montana Act exceed those approved in *Akron II*. In addition, the court can quite reasonably construe the Montana Act to avoid the danger of unconstitutionality. A reasonable reading of the statute in question is that the stringent and specific provisions of the Montana Act, not the general provisions of the Youth Court Act, govern the Youth Court in its parental notification bypass proceedings when the issue of a minor's abortion is involved.

### 2. Constructive Notice To The Parents Of Abused Minors

Montana Law provides that if the bypass petition alleges abuse as a basis for waiver of notice then the matter must be referred to the department of public health and human services for investigation. *See* Mont.Code Ann. § 50–20–212(2)(b), § 41–3–201(1). Plaintiffs argue that this process will necessarily provide constructive notice to the parents of an abused minor. They claim the process will lead to parental knowledge of the minor's pregnancy and knowledge of her intention to obtain an abortion.

The child abuse reporting procedures also contain a general confidentiality provision under which "all records concerning reports of child abuse and neglect must be kept confidential." Mont.Code Ann. § 41–3–205(1). Nonetheless, records may be disclosed to "a parent ... who is the subject of a report in the records ... *without disclosure of the identity of any person who reported or provided information on the alleged child abuse* ... contained in the records." Mont.Code Ann. § 41–3–205(3)(d). Thus, the parent would not learn that the report had originated in Youth Court.

Again, plaintiffs attempt to stretch the possible interplay between different statutes into a constitutional defect in the Montana Act. In this endeavor, they do not meet the *Casey* standard of showing that in a large fraction of cases, the Montana Act will operate as a substantial obstacle to a woman's choice to undergo an abortion.

Finally, the cases relied upon by plaintiffs in this argument are simply not on point. *Hodgson v. Minnesota*, 497 U.S. 417, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990) concerned a challenge to a two parent notification statute with a bypass procedure designed to activate if the two-parent notification was found to be unconstitutional. A fractured Court held that the two-parent notification requirement served no legitimate state interest and struck it for that reason. *Id.* at 455, 110 S.Ct. at 2947–48. However a different block on the Court held that the bypass procedure removed the constitutional objection to the two-parent notification requirement. *Id.* at 500, 110 S.Ct. at 2971. Justice

O'Conner provided the majority for each holding. Her comments quoted by plaintiffs—to the effect that the abuse exception to parental notification was in reality a means of notifying the parents—were directed *at the statute without the judicial bypass.* Here, the statute has a judicial bypass procedure in place.

Similarly, *Planned Parenthood v. Miller,* 63 F.3d 1452 (8th Cir.1995) involved a challenge to a South Dakota statute which *contained no judicial bypass provision,* only a bypass for abused and neglected minors. The State claimed that the abused-minor exception satisfied the need for a bypass procedure. *Id.* at 1460. The court rejected that argument because "it does not provide a mechanism by which minors can avoid parental notice by demonstrating to an independent decisionmaker that they are mature or that an abortion would be in their best interests [or that parental notification would not be in their best interests]. And ... it fails to preserve the minor's anonymity or even confidentiality." *Id.* at 1461.

For all of the above reasons, this court is persuaded that the Montana Act's judicial bypass procedures adequately protect the anonymity and confidentiality of the minor.

## D. Equal Protection

Plaintiffs final argument is that the Montana Act violates the Equal Protection Clause because it explicitly applies only to female minors. Plaintiffs point out that minors are authorized under Montana law to self-consent to a wide range of medical procedures. Plaintiffs say the Montana Act is an "unparalleled, sex-based restriction on access to medical care by young women," and urge the court to apply heightened review based on this invidious classification.

■ In the first place, I am not persuaded that the Montana Act creates a suspect gender classification worthy of the intermediate level of scrutiny applied by the Supreme Court in such cases. *See, e.g., Craig v. Boren,* 429 U.S. 190, 197–98, 97 S.Ct. 451, 456–57, 50 L.Ed.2d 397. Here, the Act is aimed not at women as a class, or at pregnant women as a class, or at minor females as a class, but at minor, pregnant, females. This is not an invidious classification given the State interests that the Montana Act was designed to further. See Mont.Code. Ann. § 50–20–202(2)(a)-(d); *Geduldig v. Aiello,* 417 U.S. 484, 498 n. 20, 94 S.Ct. 2485, 2492 n. 20, 41 L.Ed.2d 256 (1974) (noting that although "only women can become pregnant, it does not follow that every legislative classification concerning pregnancy is a sex-based classification").

■ Furthermore, to warrant heightened scrutiny in an Equal Protection claim, [p]roof of ... discriminatory intent or purpose is required. *Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 264–65, 97 S.Ct. 555, 562–63, 50 L.Ed.2d 450 (1977). Thus, a neutral law that has a disproportionately adverse impact upon a particular class is only unconstitutional under the Equal Protection Clause if "that impact can be traced to a discriminatory purpose." *Personnel Administrator of Mass. v. Feeney,* 442 U.S. 256, 272, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979). Plaintiffs have not demonstrated discriminatory animus here. This court will therefore apply the rational basis standard of review.

Under that standard courts will uphold a law against an Equal Protection challenge if the classification rationally serves a legitimate State objective. *United States Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 461–62, 66 L.Ed.2d 368 (1980). The Supreme Court has recognized that the States have a significant interest in protecting children, and in encouraging parental involvement the abortion decisions of minors. *Hodgson v. Minnesota,* 497 U.S. 417, 444–45, 110 S.Ct. 2926, 2941–42, 111 L.Ed.2d 344 (1990). Based on these interests, the Montana legislature is entitled to deference in its legislative purpose and findings on the Parental Notice of Abortion Act. The distinction drawn by the Montana legislature between abortion and other types of medical procedures is rationally related to its legitimate interest in protecting the well-being of minors. Thus, the Montana Act does not violate Equal Protection.

## III. Conclusion

Plaintiffs offer no argument that would support a finding that the Montana Act is unconstitutional on its face. This determina-

tion and my holding are limited and not intended to restrict any challenge to the Act's application in a real controversy. Wherefore, IT IS ORDERED:

(1) Defendant's renewed Motion for Summary Judgment (docket # 68) is **GRANTED**.

(2) Plaintiffs' renewed Motion for Summary Judgment (docket # 73) is **DENIED**.

The Clerk of Court shall enter Judgment in favor of defendant Martin Lambert.