**Iffanyi Charles Anthony OKPALOBI, d/b/a Gentilly Medical Clinic for Women, Plaintiffs;**

**Causeway Medical Suite; Bossier City Medical Suite; Hope Medical Group for Women; Delta Women's Clinic; Women's Health Clinic; James Deguerce, M.D.; and A. James Whitmore, III, M.D. on behalf of themselves and the patients they serve, Intervenors,**

v.

**Michael J. FOSTER, Jr., Governor, of the State of Louisiana, and Richard P. Ieyoub, Attorney General of State of Louisiana, in their official capacities and their agents and successors, Defendants.**

Civil Action No. 97–2214.

United States District Court,
E.D. Louisiana.

Jan. 7, 1998.

Sidney M. Bach, Gerald D. Wasserman, Bach & Wasserman, Metairie, LA, for Plaintiff.

David Glen Sanders, Roy A. Mongrue, Jr., Robert Baron Barbor, Louisiana Dept. of Justice, Civil Division, Baton Rouge, LA, for Defendant.

Priscilla J. Smith, Kathryn Kolbert, Center for Reproductive Law & Policy, New York City, William E. Rittenberg, Rittenberg & Samuel, LLC, New Orleans, LA, for Intervenors.

PORTEOUS, District Judge.

This cause came for hearing on a previous day upon the Motion of Intervenors for a Preliminary Injunction, to enjoin the operation and effect of Act 825, to be codified at Louisiana Revised Statute 9:2800.11 (1997).

The Court, having heard the arguments of counsel and having studied the legal memoranda submitted by the parties is now fully advised in the premises and ready to rule.

### ORDER AND REASONS

Abortion is an issue which consumes and divides this country. As my colleague Judge Rice summarized, "Never, since the final shot of the Civil War, over a century and a quarter ago, has American society been faced with an issue so polarizing and, at the same time, so totally incapable of rational discussion or compromise, as is the ongoing controversy, of which this case is the latest chapter." *See Women's Medical Professional*

*Corp. v. Voinovich,* 911 F.Supp. 1051 (S.D.Ohio 1995).

This Court has heard the arguments of counsel and reviewed the evidence submitted. My duty as a judicial officer, is to put aside my personal opinions and beliefs and decide this matter under what I believe to be the present state of the law. As the Supreme Court stated in *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), "Men and women of good conscience can disagree, and we suppose some always shall disagree, about the profound moral and spiritual implications of terminating a pregnancy, even in its earliest stage. Some of us as individuals find abortion offensive to our most basic principles of morality, but that cannot control our decision. Our obligation is to define the liberty of all, not to mandate our own moral code."

This case presents a challenge to the constitutionality of Act 825, which was to have been effective on August 15th, 1997. However, on Thursday, August 14th, 1997, this Court issued a temporary restraining order prohibiting the operation and effect of Act 825. *See* Record, Doc.# 10. Now, this Court is faced with deciding whether the intervenors meet the requirements for issuance of a preliminary injunction. Act 825 reads as follows:

"(A) Any person who performs an abortion is liable to the mother of the unborn child for any damage occasioned or precipitated by the abortion which action survives for a period of three years from the date of discovery of the damage with a peremptive period of ten years from the date of the abortion.

(B) For purposes of this Section:

(1) "Abortion" means the deliberate termination of an interuterine human pregnancy after fertilization of a female ovum, by any person, including the pregnant woman herself with an intention other than to produce a live birth or to remove a dead unborn child.

(2) "Damage" includes all special and general damage which are recoverable in an intentional tort, negligence, survival or wrongful death action for injuries suffered or damages occasioned by the unborn child or mother.

(3) "Unborn Child" means the unborn offspring of human beings from the moment of conception through pregnancy and until termination of the pregnancy.

(C)(1) The signing of the consent form by the mother prior to the abortion does not negate this cause of action but rather reduces the recovery of damages to the extent that the content of the consent form informed the mother of the risk of the type of injuries or loss from which she is seeking to recover.

(2) The law governing medical malpractice or limitations of liability thereof provided in Title 40 of the Louisiana Revised Statutes of 1950 are not applicable to this Section."

The statute at issue makes an abortion provider liable, in tort, to the mother for any damage occasioned or precipitated by the abortion. This damage includes all damages suffered by the mother or the unborn child. The effect of a mother's signing a consent form only reduces the recovery of damages. Thus, intervenors argue that even if an abortion provider complies with Louisiana's Woman's Right to Know Informed Consent Law, a doctor is still liable to the mother for any damages she may attribute to the abortion that was not contained in the consent form. This cause of action survives for ten years following the performance of an abortion on a woman.

**I. Jurisdiction and Standing**

This case presents a constitutional challenge to Act 825, La.R.S. 9:2800.11, under the United States Constitution. Thus, pursuant to 28 U.S.C. § 1331, this court has federal question jurisdiction.

Defendants argue that intervenors lack standing to pursue a claim for injunctive relief because the statute does not, on its face, regulate abortion. Instead, defendants submit, the statute provides a woman with an additional remedy in the event of harm from a non-disclosed risk associated with an abortion procedure. Thus, defendants assert there is no undue burden on a woman's right to obtain an abortion under *Planned Parenthood of Southeastern Pennsylvania v. Casey,*

505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992).

The intervenors maintain they have standing to raise both their own rights and the rights of their patients. The intervenors represent six health care clinics and two physicians which provide abortion services in Louisiana. Intervenors submit their clients provide over 80% of all abortions in Louisiana. *See* Transcript of Oral Argument, p. 9 ln. 14–15. There are no patients of either the physicians or the clinics before this court as a party thereof.

Intervenors claim that La.R.S 9:2800.11 will force physicians in Louisiana to cease performing abortions because of the potential exposure presented in the form of civil damage remedies related to the performance of a consensual, legal abortion. It is intervenors' position that abortion providers will undoubtedly be prevented from practicing their chosen profession in violation of the Fourteenth Amendment. Moreover intervenors argue this result places an undue burden on women seeking abortions. Thus, intervenors maintain Act 825 violates the Fourteenth Amendment rights of proposed intervenors and their pregnant patients.

In *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), an action for declaratory and injunctive relief from a state statute restricting the right to abortion was brought by similar plaintiffs: five abortion clinics and one physician. *See also, Causeway Medical Suite, et al. v. Ieyoub, et al,* 109 F.3d 1096 (5th Cir.1997), *rehearing en banc denied,* 123 F.3d 849 (5th Cir.1997); *Women's Medical Professional Corp. et al v. Voinovich et al,* 911 F.Supp. 1051 (S.D.Ohio 1995), *affirmed,* 130 F.3d 187 (6th Cir.1997).

■ Given the relationship between the intervenors and their patients, and given the obstacles which prevent pregnant women from challenging this statute, including a desire for privacy and the imminent mootness of their claims, intervenors may assert third-party standing and raise the rights of their patients. *Id.; Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (plurality opinion).

## II. *Law Governing Abortion Regulations*

In *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the United Supreme Court held that under the Due Process Clause of the Fourteenth Amendment, a pregnant woman has a constitutional right to choose to terminate her pregnancy before viability. Subsequently, the United Supreme Court affirmed its recognition of a woman's right to choose, stating that a State may not prohibit a woman from making the ultimate decision to terminate her pregnancy prior to viability. *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). Specifically, the *Casey* Court declared, "The woman's right to terminate pregnancy before viability is the most central principle of *Roe v. Wade*. It is a rule of law and a component of liberty we cannot renounce." *Casey*, 505 U.S. at 871, 112 S.Ct. at 2817.

However, a plurality of the *Casey* Court abandoned the trimester framework of *Roe* stating that a State has a profound interest in potential life throughout pregnancy. *Id.* at 870–877, 112 S.Ct. at 2817–2820. The Court then articulated the "undue burden" standard for evaluating a state regulation on abortion. *Id.* at 875–879, 112 S.Ct. 2791 at 2820–2821. The Court said that a finding of an undue burden "is a shorthand for the conclusion that a state regulation has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus." *Id.* at 877, 112 S.Ct. at 2820.

This Court acknowledges that the "undue burden" standard applies only to pre-viability abortions. However, the Supreme Court in *Casey* recognized that the State's interest in the life of the fetus allows it to regulate or proscribe abortion after viability, **except** "where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother." *Casey*, 505 U.S. at 879, 112 S.Ct. at 2821.

Since the pronouncement of the United States Supreme Court in *Casey*, several states passed a variety of laws aimed at regulating abortions, which were subsequently constitutionally challenged.[1] However, the

1. *Causeway Medical Suite v. Ieyoub,* 109 F.3d 1096 (5th Cir.1997), *rehearing en banc denied,*

123 F.3d 849 (5th Cir.1997); *Women's Medical Professional Corp., et al. v. Voinovich, et al,* 911

instant statute presents a new and unprecedented issue of law concerning abortion—that is, whether a state statute which purports to provide a woman with a cause of action in tort against her doctor for damages associated with having an abortion, has the purpose and effect of unduly burdening a woman's right to choose to have her pregnancy terminated before viability.[2]

### III. Requirements for Issuance of a Preliminary Injunction

■ To obtain a preliminary injunction, the plaintiff must show that (1) there is a substantial likelihood of success on the merits; (2) there is a substantial threat that failure to grant the preliminary injunction would result in irreparable injury: (3) the threatened injury to the plaintiff outweighs the potential damage to the defendant and (4) the injunction will not disserve the public interest. *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir.1991).

### A. Likelihood of Success

#### 1. Standards for Challenging Abortion Regulations

Intervenors assert a facial challenge to Act 825. However, intervenors also assert a Fourteenth Amendment vagueness challenge.[3]

#### (a) Facial Challenge

■ In *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), the United States Supreme Court stated that a plaintiff asserting a facial challenge to a statute imposing restrictions on abortion must establish that no set of circumstances exists under which the Act would be valid. Thereafter, in *Casey*, the United States Supreme Court appeared to apply a more relaxed standard when it invalidated Pennsylvania's spousal notification provision.[4] Several Courts agree *Casey* overrules *Salerno*.[5]

However, the Fifth Circuit appears to adhere to the rigid ruling of *Salerno*. *Barnes v. Moore*, 970 F.2d 12 (5th Cir.1992); *Barnes v. Mississippi*, 992 F.2d 1335 (5th Cir.1993); *Causeway Medical Suite v. Ieyoub*, 109 F.3d 1096 (5th Cir.1997), *rehearing en banc denied*, 123 F.3d 849 (5th Cir.1997). Citing that there is "no clear consensus among the federal courts ... regarding the standard for facial challenges in a post-*Casey* world," the Fifth Circuit said that it will continue to apply the "no set of circumstances" test enunciated by the United States Supreme Court in *Salerno*. *Causeway*, 109 F.3d at 1103. This Court recognizes the possible conflict presented by the Supreme Court's statement in *Casey* with that in *Salerno*.

In *Sojourner T. v. Edwards, et al*, 974 F.2d 27, the Fifth Circuit invalidated a Louisiana statute which criminalized the performing of abortions except under limited circumstances because it placed an undue burden on women seeking abortion before viability. In *Sojour-*

---

F.Supp. 1051 (S.D.Ohio 1995), *affirmed*, 130 F.3d 187 (6th Cir.1997); *Planned Parenthood, Sioux Falls Clinic v. Miller*, 63 F.3d 1452 (8th Cir.1995), *writ denied sub nom. Janklow v. Planned Parenthood, Sioux Falls Clinic*, — U.S. —, 116 S.Ct. 1582, 134 L.Ed.2d 679 (1996); *Fargo Women's Health Organization v. Schafer*, 18 F.3d 526 (8th Cir.1994); *Jane L. v. Bangerter*, 102 F.3d 1112 (10th Cir.1996), *cert denied sub nom, Leavitt v. Jane L.*, — U.S. —, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997); *Planned Parenthood of the Blue Ridge, et al v. Camblos, et al*, 116 F.3d 707 (4th Cir.1997); *Utah Women's Clinic, Inc. et al. v. Leavitt, et al*, 75 F.3d 564 (10th Cir.1995), *cert. denied*, — U.S. —, 116 S.Ct. 2551, 135 L.Ed.2d 1070 (1996).

**2.** This statute also presents several other constitutional issues which will be discussed *infra*.

**3.** Intervenors also assert claims based upon the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983. *See* Interve-

nor's Complaint, Doc. # 5; Transcript of Oral Argument, p. 5–6.

**4.** The Supreme Court invalidated the spousal notification provision because, "in a large fraction of the cases in which [it] is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion." *Casey*, 505 U.S. at 895, 112 S.Ct. at 2830.

**5.** *See Planned Parenthood, Sioux Falls Clinic v. Miller*, 63 F.3d 1452 (8th Cir.1995), *writ denied sub nom. Janklow v. Planned Parenthood, Sioux Falls Clinic*, — U.S. —, 116 S.Ct. 1582, 134 L.Ed.2d 679 (1996); *Casey v. Planned Parenthood*, 14 F.3d 848 (3rd Cir.1994); *Women's Medical Professional Corp., et al. v. Voinovich, et al*, 911 F.Supp. 1051 (S.D.Ohio 1995), *affirmed*, 130 F.3d 187 (6th Cir.1997); *Wicklund, et al v. Lambert, et al*, 979 F.Supp. 1285 (D.Mont.1997).

*ner T.*, the plaintiffs challenged the facial validity of the statute. The Fifth Circuit struck down the statute because it found that a State's interests are not strong enough to support a prohibition of abortion before viability. Nowhere in the opinion did the Fifth Circuit even mention *Salerno*. Instead, the Fifth Circuit appeared to apply the *Casey* undue burden analysis.[6]

This Court acknowledges that the *Salerno* standard may be inconsistent with the rule set forth in *Casey*. Nonetheless, the most recent pronouncement of the fifth Circuit states that *Salerno* is the standard for a facial challenge. See *Causeway*, 109 F.3d at 1103. This Court is bound by the pronouncements of the Fifth Circuit.

### (b) *Vagueness Challenge*

■ Intervenors additionally argue Act 825 is unconstitutionally vague. A statute or regulation may be unconstitutionally vague if it fails to give fair warning as to what conduct is prohibited. *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Due process requires that government regulations and statutes provide adequate warning as to what they command or forbid such that persons of common intelligence will not have to guess as to their meaning and may act accordingly. *Village of Hoffman Est. v. Flipside, Hoffman Est.*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). If arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. *Grayned*, 408 U.S. at 108, 92 S.Ct. at 2298–2299. A law which chills or inhibits the exercise of constitutionally protected rights is of particular concern. *Colautti v. Franklin*, 439 U.S. 379, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979).

### 2. *Standard of Care*

■ Intervenors submit Act 825 imposes an "invisible duty of care" upon doctors. It is intervenors' position that it is unclear what, if anything, a physician could do to

protect himself or herself from liability under this statute. Intervenors contend they would have no choice but to cease providing abortions in lieu of this unknowable and undeterminable duty of care. Thus, intervenors maintain this result would violate their constitutional, due process right to practice their chosen profession. Furthermore, intervenors argue such a chilling effect on abortion providers places an undue burden on a woman's right to choose to have an abortion. In both cases, intervenors contend the alleged vague statute has the purpose and effect of infringing and chilling the exercise of a constitutionally protected right.

Defendants argue that Act 825 merely provides that informed consent now has a tort remedy available for failure to disclose a risk that is reasonable and associated with the abortion procedure. However, defendants confuse their position by contending that "this particular statute dealing with disclosure does not deal with medical procedures. It deals with the ethical issue in regard to disclosing risks associated with abortion. It has nothing to do with the actual procedure. *See* Transcript of Oral Argument. p 16, ln. 7–11. Defendants submit that the thrust of this particular statute is to "raise the bar" in the area of disclosure, to compel doctors to make a forthright, honest effort to disclose all known risks associated with this procedure. And, on its face, the statute does not erect any barriers to a woman's right to an abortion." *See* Transcript of Oral Argument, p. 18, ln. 16–21. However, defendants are unable to articulate what new standard of care Act 825 imposes upon abortion providers.[7]

The Court finds that intervenors have demonstrated a substantial likelihood of success of showing that the standard of care in Act 825 is unconstitutionally vague because it fails to provide the abortion provider with fair warning of what legal standard will be

---

6. In the District Court opinion, Judge Livaudais concluded that the 1995 revisions to the judicial bypass provisions of Louisiana's parental consent law constituted an "undue burden." *See Causeway Medical Suite v. Ieyoub*, 905 F.Supp. 360, 366 (E.D.La.1995). The Fifth Circuit did not appear to disturb that finding.

7. Counsel for defendants stated at oral argument that the result of this legislation (Act 825) is to establish a new duty of care for physicians in regard to the issue of disclosure. *See* transcript of Oral Argument, p. 14, ln. 21–24. However, counsel could not elaborate on this new duty of care.

applied and of what conduct will incur civil liability.

### 3. *Undue Burden*

The Court finds the following language helpful in beginning its analysis under *Casey,* "As with any medical procedure, the State may enact regulations to further the health or safety of a woman seeking an abortion. Unnecessary regulations that have the purpose or effect of presenting a substantial obstacle to a woman seeking an abortion impose an undue burden on that right." *Casey,* 505 U.S. at 878, 112 S.Ct. at 2821.

Intervenors argue that Act 825 exposes abortion providers to the threat of substantial civil liability each time they perform an abortion. For example, intervenors assert that even where there is no medical harm to the woman, and the physician has fully complied with professional standards of care, the provider is potentially liable. It is the intervenors' contention that even where a provider complies with Louisiana's Woman's Right to Know statute (La.R.S.40:1299.35.6) and a woman provides her informed consent, the Act allows an abortion patient to sue for an award of damages and the Act will only reduce, not bar her relief for the injury in question. Moreover, intervenors argue the Act fails to give fair warning as to what conduct is prohibited.

Under the present statute, intervenors submit abortion providers would have no choice but to discontinue their abortion practices. This would unduly burden a woman's ability to choose whether to terminate her pregnancy. By directly placing such an invisible duty of care on providers, the Act effectively places a substantial obstacle in the path of a woman who seeks an abortion of a nonviable fetus.

Defendants do not advance any new arguments from those presented at the hearing on the temporary restraining order except that they contend this statute is premised on informed consent and a woman's right to be informed of the risks associated with having an abortion. Although defendants are correct in their assertion that *Casey* allows a state to regulate the methods and providers of abortions, defendants fail to acknowledge the limitation *Casey* places on such state regulation. This limitation prevents the en-actment of unnecessary regulations that have the purpose or effect of presenting a substantial obstacle to a woman seeking an abortion. *Casey,* 505 U.S. at 877–879, 112 S.Ct. at 2821.

This court is disturbed by the removal of this cause of action from the realm of medical malpractice. The defendants premise their entire argument on informed consent and the state's concern for a woman to be informed of all the risks associated with her decision to have an abortion. However, the defendants fail to offer any explanation why it is necessary to remove this "concern" from traditional medical malpractice.

For example, there exist no liability caps. Ordinarily, a qualified health care provider is protected by a $500,000 cap on damages. *See* La.R.S. 40:1299.42. This statute does not offer such protection. *See* 9:2800.11(C)(2) Rather, it subjects a qualified health care provider to unlimited monetary liability based upon an invisible duty of care.

This court acknowledges it may be necessary for a more specific statute addressing informed consent in the context of abortion; however, this Court is baffled as to why liability for failure to obtain such consent is now placed in the area of offenses and quasi offenses and taken out of medical malpractice altogether. Specifically, if defendants are concerned that women should be informed of risks in the area of psycho-stress following abortion, psychological side affects of abortion, post-abortion syndrome and psychological trauma associated with abortion, then shouldn't these concerns (alleged risks) be placed in the Woman's Right to Know Statute?

Although defendants vigorously contend this statute only provides additional protection to the pregnant woman by increasing the risk of loss to the doctor for failing to provide complete disclosure of the risks associated with the contemplated procedure, they ignore the effect of imposing such a mysterious and unknowable duty of care. That is, a physician who informs the patient in good faith of all the risks he or she reasonably believes to be associated with the abortion procedure, is still at risk for ten years following the performance of the abortion. Intervenors are cor-

rect in their assertion that "this statute sets a standard no physician can meet and creates a climate in which no provider can possibly operate." *See* Intervenors' Memorandum in support, p. 2. In fact, intervenors attach two affidavits of abortion providers which indicate that under the challenged statute, the clinics and physicians would constantly be susceptible to significant liability and that they could not continue to provide abortions to their patients under such circumstances. *See* Affidavits of Robin Rothrock and Dr. A. James Whitmore.

It would aid the Court to briefly discuss what it believes to be relevant portions of Louisiana's "Woman's Right to Know" informed consent statute. The Court stresses that this statute is not being challenged. However, since defendants assert that the purpose of Act 825 is to foster and encourage informed consent, a brief examination of the statute is warranted. Louisiana Revised Statute 40:1299.35.6 reads in pertinent part,

"**B. Informed Consent; requirements.**

. . .

Consent to an abortion is voluntary and informed if and only if:

(The statute then exhaustively lists what a physician must inform a woman seeking an abortion.)

. . .

**H. Limitation of Civil Liability.**

Any physician who complies with the provisions of this Section may not be held civilly responsible to his patient for failure to obtain informed consent to the abortion under this Section. Any and all other rights and remedies are preserved to the patient."

This informed consent statute emphatically declares that a physician will not be liable to his patient for failure to obtain informed consent, if he in fact complies with the requirements of the statute. Now, this Court again asks why is La.R.S. 9:2800.11 necessary? In this Court's opinion, the language and apparent effect of La.R.S. 9:2800.11 glaringly contradicts that of La.R.S. 40:1299.35.6. A physician who complies with the requirements of this Woman's Right to Know statute will always be subject to liability, even if he complies with that statute. It places Louisiana abortion providers in a type of "Catch-22" situation in which they have no notice or predictability as to what actions/inactions are subject to liability. This Court believes intervenors that they could not continue to provide abortions to their patients under such circumstances. Thus, this statute would unconstitutionally prevent abortion providers from exercising their chosen profession. Such a reduction of abortion providers, in this Court's opinion, would also place an undue burden on a woman's right to choose.

The United States Supreme Court is clear in its adherence to a woman's right to choose to have an abortion before viability. Although the Court has allowed some regulation by the states, that regulation cannot amount to an undue burden on the woman in exercising her choice. Any regulation, no matter how subtle on its face and no matter who it facially appears to target, can have the purpose or effect of placing a substantial obstacle in the path of a woman who seeks to have an abortion.

Under *Casey,* the "undue burden" analysis applies only to pre-viability abortions. However, the Supreme Court recognized in *Casey* that the State's interest in the life of the fetus allows it to regulate or proscribe abortion after viability, except "where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother." *Casey,* 505 U.S. at 879, 112 S.Ct. at 2821. Thus, a state may not regulate or prohibit abortions necessary to preserve the life or health of the mother. If abortion providers were chilled from performing abortions altogether, "this could have a profound, negative effect on the State's interest in preserving the life and health of the mother, and on the pregnant woman's interest in her own life and health." *Voinovich,* 911 F.Supp. at 1084.

### 4. *Unborn Child*

Article VI, Section 2 of the United States Constitution states "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme law of the Land: and the Judges in every State shall be bound thereby, any Things in the constitution of laws of any state

to the contrary notwithstanding." In *Marbury v. Madison*, 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803), the United States Supreme Court declared "It is emphatically the province and duty of the judicial department to say what the law is." *Id.* at 177. When read together, the Supremacy Clause and *Marbury* dictate that state laws in conflict with the United States Supreme Court's interpretation of the federal constitution are invalid and will be struck down.

Turning to the statute at issue, this Court is troubled with the statute providing a right to damages for "injuries suffered or damages occasioned *by the unborn child* or mother." L.a.R.S. 9:2800.11(b)(2). Moreover, the statute defines an "unborn child" as "the unborn offspring of human beings from the moment of conception through pregnancy and until termination of pregnancy." L.a.R.S. 9:2800.11(B)(3). The statute appears to run afoul of the United States Supreme Court's pronouncement that "the word 'person,' as used in the Fourteenth Amendment, does not include the unborn." *Roe v. Wade*, 410 U.S. 113, 159, 93 S.Ct. 705, 729, 35 L.Ed.2d 147 (1973). Moreover, the Fifth Circuit stated in *Poe v. Gerstein*, 517 F.2d 787, 796 (5th Cir. 1975), *aff'd sub.nom.*, *Gerstein v. Coe*, 428 U.S. 901, 96 S.Ct. 3202, 49 L.Ed.2d 1205 (1976). that "since the fetus is not a person [citations omitted] neither is it a 'child'." This Court does note that in *Margaret S. v. Treen*, 597 F.Supp. 636 (1984), *aff'd*, 794 F.2d 994 (5th Cir.1986), it was found that the use of the term "unborn child" in a previous informed consent law (ultimately found unconstitutional), did not infringe upon the plaintiffs' constitutional rights inasmuch as the statute did not mandate the inclusion of this term in the consent form which the pregnant woman signed.

Here, the term "unborn child" is used so as to give the mother a cause of action for damages sustained by the *unborn child* on the account of her alleged failure to receive informed consent in obtaining an abortion. Moreover, defendants appear to reveal the intent of the statute is to classify the "unborn child" as a person. In their memorandum in opposition, defendants state, "Regulating abortion means singling out abortion providers to an extent. This is not a routine medical procedure, *it is the taking of human life,* and those who chose to make it their profession are going to be subject to unique standards for disclosure and regulation." *See* Defendants' Memorandum in Opposition p. 10.

Equally troubling to this Court is the Civil Code's definition of "unborn child," which arguably applies in interpreting the meaning of the statute at issue. Civil Code article 26 defines an "unborn child" as "a natural person for whatever relates to its interests from the moment of conception." The classification of a fetus as an "unborn child" in the statute at issue appears to violate the Supreme Court's holdings in *Roe* and *Casey*.

Accordingly, there appears to be no set of circumstances in which the application of this statute, as written with this definition of "unborn child," would be constitutional.

### 5. *Viability*

The United States Supreme Court said in *Casey*, "Liberty must not be extinguished for want of a line that is clear ... We conclude the line should be drawn at viability, so that before that time the woman has a right to choose to terminate her pregnancy." *Casey*, 505 U.S. at 869–870, 112 S.Ct. at 2816.

This Court notes the Supreme Court's statement that a State has a legitimate interest from the outset of the pregnancy in protecting the health of the mother and the life of the fetus that may become a child. However, it cannot escape this Court that *Casey* prohibits a State from imposing a substantial obstacle to a woman's effective right to have an abortion before viability. As the *Casey* court articulated, "the concept of viability ... is the time at which there is a realistic possibility of maintaining and nourishing life outside the womb, so that the independent existence of the second life can in reason and all fairness be the object of state protection that now overrides the rights of women." *Casey*, 505 U.S. at 870, 112 S.Ct. at 2817. This statute draws no line at viability. Prior to viability, the state's interests are not strong enough to justify placing any substantial obstacle (undue burden) on a woman's right to have an abortion. Furthermore, the State may not regulate or proscribe post-viability abortions "where it is necessary, in appropri-

ate medical judgment, for the preservation of the life or health of the mother." *Casey,* 505 U.S. at 879, 112 S.Ct. at 2821.

### 6. Strict Liability

In *Planned Parenthood, Sioux Falls Clinic, et al v. Miller,* 63 F.3d 1452 (8th Cir.1995), the Eight Circuit struck down a civil damages provision citing that it provided for strict liability. *Miller* 63 F.3d at 1466. In that case, the statute provided for the trebling of actual damages upon a showing that the defendant violated one of the challenged Act's provisions (parental-notice, mandatory information or medical emergency provision). The Eighth Circuit found this was a strict-liability statute that fixed the amount of damages. In its reasoning, the Eighth Circuit said the following,

"A physician who performs an abortion on a minor who he reasonably believes is more than eighteen years old is strictly liable for his conduct, as is a physician who in good faith supplies the mandatory information over the phone to the wrong person. *The potential civil liability for even good faith, reasonable mistakes is more than enough to chill the willingness of physicians to perform abortions in South Dakota.*"

*Miller,* 63 F.3d at 1467, *citing, Colautti,* 439 U.S. at 396, 99 S.Ct. at 686.[8]

The wording of Act 825 provides a damage remedy for the unborn child. Thus, it appears to this Court, that a woman suing on behalf of her unborn child for damages occasioned by the abortion she chose to have performed, need only prove the unborn child was aborted. Damages on the unborn child's behalf appear to be automatic upon this showing. A consent form which indicates the physician informed the woman that the fetus might die, would not, under the statute's wording, negate the cause of action. The potential litigation this vague, Louisiana statute poses is enough to chill the willingness of physicians to perform abortions. This would in turn impose an undue burden on women seeking abortions in Louisiana.

### 7. Conclusion

The instant statute presents a new battlefield—that is unconstitutional regulation of abortion providers so as to directly strike at a woman's right of choice. The statute has the purpose and effect of infringing and chilling the exercise of constitutionally protected rights of abortion providers and woman seeking abortions. Such backhanded and subtle attempts that chip away at a vital component of a person's liberty will not be tolerated.

Given the foregoing, this Court concludes that the intervenors have demonstrated a substantial likelihood of success on the merits of a Fourteenth Amendment claim.

### B. Irreparable Injury

This Court determined that the plaintiff and intervenors have standing not only to raise their own rights, but also to raise the rights of their patients. Therefore, this Court will focus on the irreparable injury the patients will suffer.

Intervenors demonstrate the present statute creates a climate of unlimited, unpredictable and ambiguous liability in which no abortion provider can possibly operate. Thus, women will be unduly burdened in their choice to have an abortion before viability.[9] In other words, L.a.R.S. 9:2800.11 has the purpose and effect of placing a substantial obstacle in the path of a woman seeking an abortion. Although defendants contend this is not the purpose of the statute, this court cannot ignore the that statute's invisible duty of care, unlimited liability and the implication of the fetus as a person for civil damages indicate a purpose far more reaching than mere informed consent. This statute appears to be a subtle, back-

---

**8.** The Eighth Circuit adheres to the finding that *Casey* overrules *Salerno,* by stating that, it chose to follow what the "Supreme Court actually did—rather than what it failed to say." *Miller,* 63 F.3d at 1458. Thus, in *Miller,* the Eighth Circuit needed only to find the statute at issue placed an undue burden on a woman's right to choose whether to terminate her pre-viability pregnancy. The Court did not have to address the potential constitutional violations concerning the abortion providers' right to practice their chosen profession.

**9.** Moreover, this Court reiterates that Louisiana cannot unduly regulate or proscribe post-viable abortions where the life or health of the mother is at issue.

handed attempt to burden a woman's choice to terminate her pregnancy.

Since this Court finds intervenors have established that there is a substantial likelihood of success on the merits of a Fourteenth Amendment challenge of Act 825 and that Act 825 would likely present an undue burden on a woman's right to choose, no further showing of irreparable injury is necessary. *Deerfield Medical Center v. City of Deerfield Beach,* 661 F.2d 328 (5th Cir.1981) ("If the constitutional right of privacy is either threatened or in fact being impaired, this mandates a finding of irreparable injury").

### C. Threatened Injury to the Plaintiffs

This Court must also balance the equities in considering whether the harm to the defendants in issuing an injunction outweighs the harm to the plaintiffs and intervenors in denying an injunction.

Defendants argue that State has a "compelling interest in regulating the dissemination of information to women contemplating an abortion." *See* Defendants' Memorandum In Opposition, p. 13–14. Further, defendants maintain that "the longer the statute is held hostage by the unsupportable claims of unconstitutionality, the more abortions will be performed without the benefit of real informed consent to the procedure. It is in the best interest of the state to permit the tort remedy and compel the abortion providers to disclose all the risks associated with the procedure, not just the bare minimum they think is necessary". *Id.* at p. 14–15.

In this Court's opinion, defendants' completely ignore the fact that Louisiana recently enacted a comprehensive informed consent statute titled, "Woman's Right to Know." *See* La.R.S. 40:1299.35.6. In this statute, the Louisiana Legislature acknowledges the same concerns raised by defendants in this matter. Specifically, the alleged purpose of this informed consent statute is to "ensure that every woman considering an abortion receive complete information on her alternatives and that every woman submitting to an abortion do so only after giving voluntary and informed consent to the abortion procedure." *See* La.R.S. 40:1299.35.6(A)(5)(a). Contrary to what defendants would have this Court believe, women who are not informed

in accordance with the vague standards contained within Act 825 still have a remedy at law. The Louisiana Medical Malpractice Act would cover the concerns advanced by defendants should this court issue an injunction.

However, the threat that a woman would be unduly burdened in her decision to terminate her pregnancy and that abortion providers would be chilled from practicing their chosen profession should this Court not issue an injunction, certainly outweighs any harm the defendants argue they will suffer if this Court should issue an injunction.

### D. Public Interest

This Court must finally determine whether the issuance of a preliminary injunction would serve the public interest.

In this Court's opinion, since the intervenors have demonstrated a substantial likelihood of success of showing that Act 825 unduly burdens a woman's right to choose to terminate her pregnancy and that abortion providers will be chilled from exercising their chosen profession, the public interest is best served by a full hearing on the merits of the legislation. Accordingly, this Court concludes that the public interest is best served by the issuance of a preliminary injunction.

### IV. ISSUE OF BOND

Rule 65(c) of the Federal Rules of Civil Procedure requires that no preliminary injunction shall issue except upon the giving of security by the applicant, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined.

The Court granted the issuance of a temporary restraining order without bond, reserving to the defendants the right to reurge security at the preliminary injunction hearing. *See* Record, Doc. # 10. The defendants failed to reurge the issue of bond on December 10th, 1997. Thus, having considered the issue of bond as is required by Rule 65 of the Federal Rules of Civil Procedure, this Court concludes that intervenors should not be required to post bond.

## CONCLUSION

This Court finds that intervenors have established all four prongs necessary for the issuance of a preliminary injunction enjoining the operation and effect of Act 825, to be codified at La.R.S. 9:2800.11 (1997).

Accordingly,

**IT IS ORDERED** that the Motion of Intervenors for a Preliminary Injunction, enjoining the operation and effect of Act 825, to be codified at Louisiana Revised Statute 9:2800.11 (1997), be, and the same is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the operation and effect of Act 825, to be codified at Louisiana Revised Statute 9:2800.11 (1997), be, and the same is hereby **PRELIMINARILY ENJOINED** in its entirety.

**IT IS FURTHER ORDERED** that no bond should be required of the Intervenors.