BENAVIDES, Circuit Judge,
concurring in part and dissenting in part:
The majority, in focusing on the injunc-tive relief sought by the plaintiffs, has paid too little attention to the plaintiffs’ request for a declaration that Louisiana’s strict liability scheme for regulating the provision of abortions unconstitutionally burdens a woman’s right to an abortion. In *433 my view, the plaintiffs present a “controversy” that the Declaratory Judgment Act and Article III require this Court to resolve. Moreover, the Supreme Court’s sovereign immunity jurisprudence does not foreclose our ability to vindicate constitutional rights when the existence of a state’s self-executing statutory liability scheme places those rights in jeopardy. Indeed, I am confident this case falls “on the Ex parte Young side” of the Supreme Court’s sovereign immunity jurisprudence — that is, as in Young, I believe the duty of this Court to protect constitutional rights and thereby ensure the supremacy of the Constitution over state laws outweighs the sovereign right of states to immunity from suit in federal court. For that reason, I respectfully dissent. I write separately to explain my belief that the connection requirement on which both the majority and dissent concentrate should be understood and analyzed in terms of standing, and has little relevance to the interplay between Ex parte Young and the Eleventh Amendment.
I.
I agree with the majority to the extent that it holds the plaintiffs have no standing to seek injunctive relief. Article III standing requires a litigant to have suffered an injury-in-fact, fairly traceable to the defendant’s allegedly unlawful conduct, and likely to be redressed by the requested relief. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). When analyzing the plaintiffs’ claim for injunctive relief under the unusual facts of this case, I am constrained by Supreme Court precedent to find the causation and redressability requirements lacking. However, unlike the majority of the Court, I do not believe the inquiry ends here. In addition to seeking injunctive relief, the plaintiffs in this case brought suit under the Declaratory Judgment Act, 28 U.S.C. § 2201, which provides a mechanism for pre-enforcement review of a statute.[1] See Steffel v. Thompson, 415 U.S. 452, 478, 94 S.Ct. 1209, 1225, 39 L.Ed.2d 505 (1974) (Rehnquist, J., concurring) (“[M]y reading of the legislative history of the Declaratory Judgment Act of 1934 suggests that its primary purpose was to enable persons to obtain a definition of their rights before an actual injury had occurred ... ”).[2] Although injunctive relief is not proper, the *434 Supreme Court has repeatedly recognized “that different considerations enter into a federal court’s decision as to declaratory relief, on the one hand, and injunctive relief, on the other.” Roe v. Wade, 410 U.S. 113, 166, 93 S.Ct. 706, 733, 35 L.Ed.2d 147 (1973) (citing Zwickler v. Koota, 389 U.S. 241, 252-55, 88 S.Ct. 391, 397-99, 19 L.Ed.2d 444 (1967)). Based on my reading of Supreme Court precedent, I find the plaintiffs have standing to bring an action for declaratory relief.
It is familiar doctrine that the Declaratory Judgment Act does not itself grant federal jurisdiction. Instead, jurisdiction under the Act depends on the existence of an “actual controversy” in a constitutional sense. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-40, 57 S.Ct. 461, 463-64, 81 L.Ed. 617 (1937); Nat’l Rifle Ass’n of Am. v. Magaw, 132 F.3d 272, 279 (6th Cir.1997). In determining whether plaintiffs have standing to bring their claim pursuant to the Declaratory Judgment Act the basic inquiry is whether there exists, under the facts alleged, “a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.” Maryland Cos. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).[3] Because I find that the plaintiffs have presented an actual controversy and have legal interests adverse to the named defendants, the Attorney General and Governor of Louisiana, I believe we have jurisdiction under Article III to consider their request for declaratory relief.
In Steffel v. Thompson, the Supreme Court analyzed the appropriateness of declaratory relief, specifically the existence of an actual controversy, independently from the propriety of issuing an injunction. 415 U.S. 452, 469-70, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). The plaintiff in Steffel sought to distribute handbills protesting United States’ involvement in the Vietnam War on the sidewalk near a local shopping center. Several times the plaintiff was asked to leave and was eventually threatened with arrest for criminal trespass. Id. at 454-56, 94 S.Ct. 1209. The plaintiff sought declaratory relief that the state trespassing statute, as applied, interfered with the exercise of his constitutional rights. Id. at 454-55, 94 S.Ct. 1209. The Supreme Court held that the plaintiff demonstrated an actual controversy because the plaintiff suffered threats of injury that were not “imaginary or speculative” and had not been rendered moot. Id. at 458-60, 94 S.Ct. 1209 (contrasting Younger v. Harris, 401 U.S. 37, 41, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971) and Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969)). Since the plaintiff faced a genuine threat of injury absent a *435 declaration by the Court, an “actual controversy” existed and declaratory relief was appropriate.
Recently, the Supreme Court reaffirmed that “Steffel ... falls within the traditional scope of declaratory judgment actions because it completely resolved a concrete controversy susceptible to conclusive judicial determination.” Calderon v. Ashmus, 523 U.S. 740, 749, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998). In Calderon, inmates sought a declaration of whether the state of California could raise the expedited review provisions of the Antiterrorism and Effective Death Penalty Act as a defense. Id. at 742, 118 S.Ct. 1694. The Court distinguished Steffel on several grounds and found that the petitioners presented no actual controversy, and thus lacked standing under the Declaratory Judgment Act. Id. at 749, 118 S.Ct. 1694. First, a declaration of California’s status as a qualifying state would only resolve a discrete issue and not the underlying controversy— the plaintiffs’ habeas claims. Id. at 469-70, 118 S.Ct. 1694. More importantly, in contrast to Steffel, the statute in Calderon had “no coercive impact on the legal rights or obligations of either party.” Id. In other words, the class of inmates would not have incurred any detriment by filing their habeas petitions prior to a ruling on whether California was a qualifying state. The failure to show any such injury removed the inmates’ action from the traditional bounds of declaratory relief.
The present case is similar to Steffel in that the plaintiffs have demonstrated an injury-in-fact that will be redressed by the requested declaration. Initially, the dispute presented by the plaintiffs is neither hypothetical nor speculative, rather the dispute is founded upon the definite and concrete consequences that will flow from the existence of Act 825.[4] The majority does not seem to dispute, nor could it, that the plaintiffs will suffer an injury-in-fact arising from enforcement of the Act. But beyond enforcement, Act 825, by its mere existence, coerces the plaintiffs to abandon the exercise of their legal rights lest they risk incurring substantial civil liability. With respect to the Act’s coercive effect, this case presents what this Court has recognized as the classic situation for declaratory relief: “where the plaintiff is put to the Hobson’s choice of giving up an intended course of conduct which he believes he is entitled to undertake or facing possible severe civil or criminal consequences if he does undertake it.” Texas Employers’ Ins. Assoc. v. Jackson, 862 F.2d 491, 507 n. 22 (5th Cir.1988) (en banc); see also Nat’l. Rifle, 132 F.3d at 279 (6th Cir.1997) (“[P]re-enforcement review is usually granted under the Declaratory Judgment Act when a statute ‘imposes costly, self-executing compliance burdens or if it chills protected [constitutional] activity.’ ”) (quoting Minnesota Citizens Concerned for Life v. Fed. Election Comm’n, 113 F.3d 129, 132 (8th Cir.1997)). Further, this injury to the plaintiffs is directly traceable to the promulgation of Act 825 and will be redressed by a declaration of the statute’s constitutionality. Unlike Calderon, a declaration in the present case completely resolves the underlying controversy — the constitutionality of the statute’s chilling effect. Absent a declaration on the constitutionality of Louisiana’s strict liability regime, the plaintiffs will be forced to confront the Hobson’s choice that the Declaratory Judgement Act was intended to prevent.[5]
*436 Given the plaintiffs’ demonstration of an appreciable injury, the inquiry turns to whether the Governor or Attorney General has a legal interest adverse to that of the plaintiffs. I find the Attorney General has a sufficient legal interest in the constitutionality of the state’s statute. This interest is recognized in both federal and Louisiana statutes, which require notification of the Attorney General in any case, civil or criminal, where the constitutionality of a state statute is at issue. La.Code Civ. Proc. Ann. art. 1880; 28 U.S.C. § 2403. In such cases* the Attorney General is entitled to present argument on the question of constitutionality. Id. Finding the Attorney General has a sufficient legal interest is also consistent with the underpinnings of the standing requirement. In this regard, the Supreme Court has inquired whether the parties “[h]ave ... such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions?” Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). I have no doubt that the Attorney General’s interest in the constitutionality of the state’s laws guaranteed a strong advocate and served to identify and develop for this Court, and the district court, the relevant arguments.
The concreteness of the engagement and the sufficiency of the remedy in this case are confirmed by Supreme Court jurisprudence that “has visibly relaxed ... traditional standing principles in deciding abortion cases.” See Margaret S. v. Edwards, 794 F.2d 994, 997 (5th Cir.1986) (Higginbotham, J.). In Doe v. Bolton, the Supreme Court found that physicians presented a justiciable controversy because the statute at issue was designed to operate directly against them, despite the fact that none of them had been prosecuted or even threatened with prosecution. 410 U.S. 179, 188, 93 S.Ct. 739, 745, 35 L.Ed.2d 201 (1973). Likewise, the physicians and clinics in this case are the direct targets of Louisiana’s statute. These plaintiffs’ injury is as concrete as that alleged by the plaintiffs in Doe. With respect to redressa-bility, I agree that it makes little sense to enjoin the Attorney General or Governor from doing that which they have no power to do within a self-executing liability statute — enforce the statute. Yet, as noted above, enforcement of the statute is not the sole cause of injury to the plaintiffs. The mere existence of the statute causes concrete injury. The requested declaration sufficiently redresses that injury by granting the plaintiffs a substantial basis for confidence in the constitutionality of their conduct. See Roe, 410 U.S. at 167, 93 S.Ct. at 733 (refusing to address the propriety of injunctive relief on the basis that declaratory relief sufficiently redressed the plaintiffs’ injury). Because the plaintiffs have demonstrated an appreciable injury that this Court can redress through a conclusive declaration of the statute’s constitutionality, they have presented an actual controversy and Article III obliges us to act.
II.
Having determined that the plaintiffs present a justiciable controversy, I turn to Judge Jolly’s conclusion that the Eleventh Amendment renders this Court “powerless to act” on the constitutionality of a private enforcement scheme.[6] Judge Jolly reaeh- *437 es this conclusion by misconstruing Ex parte Young as a narrow exception to the Eleventh Amendment’s general directive that states are immune from suit in federal court. In this regard, his opinion neglects our constitutional responsibility, expressed in Yoimg, to redress ongoing violations of federal law and thus insure the supremacy of the Constitution.[7] Of course, “the need to promote the supremacy of federal law must be accommodated to the constitutional immunity of the States.” Pennhurst, 465 U.S. at 105-06,104 S.Ct. 900. Accordingly, “[ajpplication of the Young exception must reflect a proper understanding of its role in our federal system and respect for state courts.” Idaho v. Coeur d’Alene Tribe of Idaho, 521 U.S. 261, 117 S.Ct. 2028, 2084, 138 L.Ed.2d 438 (1997) (majority opinion). The Supreme Court’s limits on Young thus consider the basic requirement that federal courts uphold the supremacy of the Constitution in light of the practical effect of requested relief on state sovereignty. After considering these limits, I am convinced that when a plaintiff has standing to challenge the existence of a state’s self-executing, private liability scheme that currently infringes constitutional rights, federal courts have jurisdiction to redress constitutional violations.
The plaintiffs’ lawsuit requires that we respect the fundamental role of Ex parte Young in our federal structure. In reconciling the competing constitutional commandments in the Eleventh and Fourteenth Amendments,[8] the Young court concluded that federal courts, in order to preserve an individual’s rights guaranteed in the Constitution, must have jurisdiction to prevent the enforcement of unconstitutional state legislation. Young, 209 U.S. at 159-60, 28 S.Ct. 441. The Court reasoned that the Eleventh Amendment could not confer immunity on a state officer to the extent that the state officer acted in an unconstitutional manner.[9] Since 1908, the Court has reiterated time and again that the values embodied-in Ex parte Young are fundamental to the concept of federalism embedded in our Constitution.[10] In *438 deciding whether the Young doctrine extends to cases such as that presented by the plaintiffs, our duty is to “ensure that the doctrine of sovereign immunity remains meaningful,.while also giving recognition to the' need to prevent violations of federal law.” Coeur d’Alene, 117 S.Ct. at 2034 (majority opinion).
The plaintiffs’ suit implicates the precise concerns regarding the supremacy of constitutional rights that precipitated the Young line of cases. To be sure, the case presented by the plaintiffs does not fall into the traditional Young paradigm — no Louisiana state officer will enforce Act 825’s civil penalty against doctors that perform abortions, likewise no doctor will be prosecuted by the state for performing an abortion. Nevertheless, the Act’s unique authorization of private strict liability lawsuits against providers of abortions burdens the right to an abortion to the same extent as legislation granting an Attorney General the power to prosecute or fine individuals for performing abortions. That the private sector, not the state, enforces penalties for performing abortions does not alter the fundamental effect of Louisiana’s scheme — doctors will refrain from performing abortions because of the financial consequences involved and women in Louisiana will face a significant burden in exercising their constitutional right to receive an abortion. See Jackson, 862 F.2d at 507 (recognizing that both civil and criminal penalties could chill constitutional conduct). Likewise, the structural anomaly of Act 825 should not render Louisiana any more immune from challenge in federal court. This case presents a context in which Ex parte Young must operate to afford meaningful protection for rights guaranteed by the Constitution.
Though Judge Jolly neglects to consider fully the aspects of Ex parte Young supporting federal jurisdiction to hear cases involving private schemes, very real concerns about protecting the sovereign immunity of the states animate his opinion. That opinion, however, ignores both practical reality and recent Supreme Court jurisprudence regarding the role of officials sued in Ex parte Young actions. Judge Jolly seems to understand the connection requirement that serves as the foundation for his Eleventh Amendment analysis as a mechanism for ensuring that the state officer, rather than the state itself, is the object of the litigation. In this sense, the opinion’s connection requirement assumes that the fiction of Ex parte Young has some real meaning in the Eleventh Amendment context — that it is the individual officer, not the state itself that is the real party in interest. This is simply not the case. For many years, the Supreme Court has shaped the scope of the Ex parte Young exception as if the state officer were the state. See, e.g., Coeur d’Alene, 117 S.Ct. at 2034 (majority opinion) (“Th[e] commonsense observation of the State’s real interest when its officers are named as individuals has not escaped notice or comment from this Court, either before or after Young.”) (citations omitted). Were the state not the real party in interest in suits brought under Ex parte *439 Young, the Supreme Court could never find the necessary state action to support a violation of the 14th Amendment. See Home Telephone. & Telegraph. Co. v. City of Los Angeles, 227 U.S. 278, 283-84, 33 S.Ct. 312, 57 L.Ed. 510 (1913) (recognizing a distinction between official action under the Fourteenth Amendment and official action for purposes of the Eleventh Amendment). Similarly, the provision of the Federal Rules of Civil Procedure providing for the automatic substitution of the name of one state official for the name of his predecessor would make no sense in litigation under Ex parte Young. See Fed. R. Civ. P. 25(d) (1999). Indeed, Judge Jolly’s own characterization of Ex parte Young as an exception to the Eleventh Amendment evinces an understanding that Young allows the state to be sued, albeit through its officers, when constitutional questions are raised and prospective relief is sought.
In developing the connection requirement as a component of the Eleventh Amendment’s protection of state sovereignty, Judge Jolly’s opinion attempts to spin the Young fiction into reality. Yet, the opinion’s connection requirement turns reality on its head, granting a state broader immunity from suit in federal court when its officers are not directly involved in the enforcement of an unconstitutional act than when the officers are directly involved. That position is simply untenable. Although language in Young may support the connection requirement defined in Judge Jolly’s opinion, the Supreme Court’s modern standing doctrine has subsumed the connection inquiry. The standing requirements of injury-in-fact, causation, and redressability parallel the majority’s requirement that state officers have “some connection with the enforcement of the act” alleged to be unconstitutional or be “specially charged with the duty to enforce the statute” and be threatening to exercise that duty.[11] Perhaps for this reason, Judge Jolly’s opinion does not cite a single modern Supreme Court case that relies on its connection requirement to support dismissal of an Ex parte Young action on Eleventh Amendment grounds. By analyzing the connection requirement in terms of standing, the Supreme Court has retained the limit, but avoided the conundrum of increasing the scope of Eleventh Amendment protection as the role of the state in an allegedly unconstitutional statute decreases. This Court must analyze the proper scope of Young in light of reality rather than fiction. Reality requires examination of the limits that the Supreme Court has consistently placed on Young and determining whether those limits apply in the present context.[12]
Unlike Judge Jolly’s connection requirement, the Supreme Court’s limits on Ex parte Young have focused on the extent to which federal litigation will interfere with a state’s sovereign rights. The Supreme Court’s principal limit has been on the nature of the relief sought: Ex parte Young cannot be used to expose states to retroactive monetary damages. Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974); see also Hutto v. Finney, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) (allowing Ex parte Young plaintiffs to receive monetary relief that is clearly ancillary to non-monetary *440 prospective relief). This limit reflects both historical and practical considerations. The “shock of surprise” following the Supreme Court’s decision in Chisholm that led to the passage of the Eleventh Amendment was triggered by the fear that individuals would be able to use the federal courts to collect large debts from the states. See Principality of Monaco v. Mississippi, 292 U.S. 313, 54 S.Ct. 745, 749, 78 L.Ed. 1282 (1934). Thus, the prohibition on seeking monetary relief against a state in federal court addresses the historical concerns that existed at the time the Constitution, and subsequently the Eleventh Amendment, were ratified. From a practical standpoint, this limit safeguards one of the most important elements of sovereignty — the ability to independently manage and distribute public revenues. At the same time, the Court’s allowance of prospective injunctive or declaratory relief provides a mechanism for safeguarding the ultimate supremacy of our federal constitution and the federal system which it created. See Coeur d’Al-ene at 2040; id. at 2046 (O’Connor, J., concurring) (“When a plaintiff seeks prospective relief to end an ongoing violation of federal rights, ordinarily the Eleventh Amendment poses no bar.”); Green, 106 S.Ct. at 426 (“[T]he availability of prospective relief of the sort awarded in Ex parte Young gives life to the Supremacy Clause.”); Milliken v. Bradley, 433 U.S. 267, 97 S.Ct. 2749, 2761-62, 53 L.Ed.2d 745 (1977).
The Supreme Court has applied its limits on the scope of Young pragmatically, guided by the substantive effect of the remedy sought rather than the form alone. In this regard, even injunctive or declaratory relief that substantially interferes with a state’s sovereignty may be barred by the Eleventh Amendment when constitutional concerns are not at issue. Thus, in Coeur d’Alene, a majority of the Supreme Court held that the plaintiff Indian tribe could not receive injunctive or declaratory relief that would in effect function like a quiet title action against the state of Idaho. See Coeur d’Alene, 117 S.Ct. at 2044 (O’Connor, J., concurring). Though the majority of the Court clearly rejected the case-by-case balancing approach proposed by Justice Kennedy, the Court also recognized that the Young — Eleventh Amendment inquiry had to transcend form and inquire into substance. Judge Jolly’s approach is flawed in that it limits Ex parte Young haphazardly without any consideration of the constitutional rights at stake or how the relief sought interferes with states’ rights.
In the present case, the plaintiffs challenge the constitutionality of state legislation and thus invoke Young’s concern regarding the power of the federal courts to vindicate constitutional rights. Moreover, the form of relief that they seek — a declaration of unconstitutionality — is the least intrusive available.[13] In Steffel v. Thompson, the Supreme Court recognized the unique nature of and “different considerations” involved with granting declaratory relief. Steffel, 415 U.S. at 469-70, 94 S.Ct. 1209. The Court has disregarded the distinction between declaratory and injunctive relief only when “principles of federalism militated altogether against federal intervention in a class of adjudications.” Id. at 472, 94 S.Ct. 1209. For example, in Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), the Court concluded the issuance of a declaration of a statute’s constitutionality during a pending state proceeding would offend a principle notion of federalism— “that state courts have the solemn responsibility, equally with the federal courts ‘to guard, enforce, and protect every right granted or secured by the constitution of *441 the United States.’ ” Steffel, 415 U.S. at 460-61, 94 S.Ct. 1209 (quoting Robb v. Connolly, 111 U.S. 624, 637, 4 S.Ct. 544, 28 L.Ed. 542 (1884)). However, “[w]hen no state proceeding is pending and thus considerations of equity, comity, and federalism have little vitality, the propriety of granting federal declaratory relief may properly be considered independently of a request for injunctive relief.” Id. at 462, 94 S.Ct. 1209. Far from precluding our Court from considering the merits of a plaintiffs request for declaratory relief, principles of federalism compel our Court to address alleged constitutional violations when, as in this case, a plaintiff successfully establishes the existence of a continuing controversy.[14]
III.
The avenue to the federal courts opened by Ex parte Young should be available when the plaintiff (1) can establish an actual controversy involving alleged constitutional violations; and (2) seeks declaratory relief that does not in substance interfere with sovereign rights in ways specifically prohibited by the Supreme Court, such as effectively awarding monetary damages against a state or preempting ongoing state proceedings. This approach neither casts aside the Young fiction, nor crafts a new “declaratory judgment exception” to the Eleventh Amendment. Rather, my approach reflects a principled and necessary application of the Ex parte Young doctrine. Though I agree with the majority’s conclusion that the injunction against the named defendants was improper, I find that the plaintiffs have presented an actual controversy that is ripe for declaratory relief. Moreover, in my view, the Eleventh Amendment does not impede the plaintiffs’ ability to pursue that relief in a federal forum. Accordingly, I concur with the majority’s opinion that the plaintiffs’ injunction should be dismissed, but dissent to the extent that the majority opinion undermines the district court’s power to issue the underlying declaration on Act 825’s constitutionality.

. The Act provides:
(a) In a case oi actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.
The legislative history of the Act explains that declaratory judgments ”ha[ve] been especially useful in avoiding the necessity ... of having to act at one’s peril ... or abandon one’s rights because of a fear of incurring damages.’’ S.Rep. No. 1005, 73d Cong., 2d Sess., 2-3, 6 (1934); see also Hearing on H.R. 5623 before a Subcommittee of the Senate Committee on the Judiciary, 70th Cong., 1st Sess., 75-76 (1928). (’’Assuming that the plaintiff has a vital interest in the enforcement of the challenged statute or ordinance, there is no reason why a declaratory judgment should not be issued, instead of compelling a violation of the statute as a condition precedent to challenging its constitutionality.”)

. Judge Higginbotham insists that the district court in this case granted only injunctive relief, not a declaration of Act 825’s unconstitutionality. As a consequence, he maintains that independent consideration of plaintiffs’ standing to seek declaratory relief is inappropriate. In granting a preliminary injunction, the district court declared that Act 825 "has the purpose and effect of infringing and chilling the exercise of constitutionally protected rights of abortion providers and woman [sic] seeking abortions.” Okpalobi v. Foster, 981 F.Supp. 977, 986 (E.D.La.1998). This declaration provided the sole basis for the district court's conclusion that the plaintiffs had demonstrated a substantial likelihood of success on the merits of their request for a permanent injunction against the statute's enforcement. See id. When the district court later made its preliminary injunction permanent pursuant to an agreement between the parties, it referenced the declaration contained in its previous order. I conclude, like the panel majority, that ”[b]ecause of the express reference to the earlier order declaring the Act unconstitutional and because the only basis for the in *434 junction articulated is the district court’s decision that the Act violated the Constitution, the order before us on appeal of necessity grants the plaintiffs' request for both declaratory and injunctive relief.” See Okpalobi v. Foster, 190 F.3d 337, 341 (5th Cir.1999). The Supreme Court reached the same conclusion on similar facts. See Green v. Mansour, 474 U.S. 64, 106 S.Ct. 423, 426, n. 1, 88 L.Ed.2d 371 (1985) (finding declaration of regulation’s unconstitutionality "embodied in” district court's judgment granting injunctive relief).

. While there is no bright line test for finding an "actual controversy” the Supreme Court provided guidance on the inquiry in Aetna Life Ins. Co., the seminal case affirming the constitutionality of the Declaratory Judgment Act:
A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character, from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. Where there is such a concrete case admitting of an immediate and definitive determination of the proceeding upon the facts alleged, the judicial function may be appropriately exercised ...
300 U.S. at 240-41, 57 S.Ct. at 464 (citations omitted).

. This Circuit has stated: “A controversy, to be justiciable, must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional, or based upon the possibility of a factual situation that may never develop.” Rowan Companies, Inc. v. Griffin, 876 F.2d 26, 28 (5th Cir.1989) (quoting Brown & Root, Inc. v. Big Rock Corp., 383 F.2d 662, 665 (5th Cir.1967)).

. Moreover, absent pre-enforcement action by this Court, the nature of the statutory regime may inhibit any review of its constitutionality. Doctors fearing heightened liability will likely forgo performing abortions, thus there will be no strict liability suits brought in which the constitutionality of the regime could be tested. This lack of review exacerbates the true inju *436 ry — the "chilling” of a woman’s constitutional right to choose an abortion.

. As Judge Jolly’s Eleventh Amendment conclusion has not received the votes of a majority of the sitting en banc court, it is not controlling authority for future Eleventh Amendment questions in this Circuit. See Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) ("When a fragmented Court decides a case ... the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.”), cited in Doe v. Beaumont Ind. School Dist., 240 F.3d 462, 483 n. 3 (5th Cir.2001); see also U.S. v. Ferguson, 211 F.3d 878, 885 (5th Cir.2000) (noting that the *437 opinion of an equally-divided en banc court does not disturb the prior precedent of this Circuit).

. Ex parte Young, 209 U.S. 123, 160, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (“If the question of unconstitutionality, with reference, at least, to the Federal Constitution, be first raised in a Federal court, that court ... has the right to decide it....”). See also Osborn v. Bank of U.S., 22 U.S. (9 Wheat) 738, 846-51, 6 L.Ed. 204 (1828).

. Where the Eleventh Amendment prohibits the commencement of a suit against a state in federal court, the Fourteenth provides that no state shall deprive any person of life, liberty, or property without due process of law. See Young, 209 U.S. at 149, 28 S.Ct. 441. Though Young avoided any pronouncement that the Fourteenth Amendment altered the scope of the Eleventh, the Supreme Court has since recognized that the Eleventh Amendment has less force when rights protected by the Fourteenth Amendment are at stake. See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 58, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (“CT]he Fourteenth Amendment, by expanding federal power at the expense of state autonomy, ... fundamentally altered the balance of state and federal power struck by the Constitution.”); Fitzpatrick v. Bitzer, 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) ("[W]e think that the Eleventh Amendment, and the principle of state sovereignty which it embodies, are necessarily limited by the enforcement provisions of section 5 of the 14th Amendment.”). That this case involves constitutional rights protected by the 14th Amendment, as opposed to non-constitutional federal rights, is thus significant.

. Young, 209 U.S. at 159, 28 S.Ct. 441 (“The act to be enforced is alleged to be unconstitutional; and if it be so, the use of the name of the state to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of, and one which does not affect, the state in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting, by the use of the name of the state, to enforce a legislative enactment which is void because unconstitutional ... The state has no power to impart to [its officials] any immunity from responsibility to the supreme authority of the United States.”)

. See Coeur d'Alene, 117 S.Ct. at 2034 (majority opinion) ("We do not ... question the continuing validity of the Ex parte Young doc *438 trine.”); Seminole Tribe v. Florida, 517 U.S. 44, 116 S.Ct. 1114, 1131, n. 14, 134 L.Ed.2d 252 (1996) (recognizing Ex parte Young as one of three significant exceptions to the Eleventh Amendment bar on suits in federal court); Green, 106 S.Ct. at 426 ("Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law.”); Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 105-06, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ("CT]he Young doctrine has been accepted as necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.") (citations omitted); Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979); Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974); Georgia R.R. & Banking Co. v. Redwine, 342 U.S. 299, 72 S.Ct. 321, 324, 96 L.Ed. 335 (1952). See also Judge Higginbotham's concurring opinion (Young "is a powerful implementation of federalism necessary to the Supremacy Clause, a stellar companion to Marbury and Martin v. Hunter’s Lessee.”).

. The majority's explanation of “the connection” simply reiterates the causation and re-dressability components of standing, while the majority's requirement that the officer be threatening to exercise the duty is encompassed by the current injury-in-fact analysis under standing.

. While it might be sensible to do away with the Young fiction and recognize that the Fourteenth Amendment and our federal structure require that states be sued in limited circumstances, that would be beyond the power of this intermediate court. That is not, however, what this opinion purports to do. In this sense. Judge Jolly’s caricature of my opinion as a gross departure from existing case law and the Constitution fails to confront the Supreme Court’s modern jurisprudence on the interplay between Ex parte Young and the Eleventh Amendment in any meaningful way.

. If the federal court declares the contested statute unconstitutional, the state legislature may amend or repeal the statute or the state courts may be persuaded by the decision of the federal court. In any event, "[a] 11 these possible avenues of relief would be reached voluntarily by the States and would be completely consistent with the concepts of federalism ...” Id. at 484, 94 S.Ct. 1209 (Rehnquist, J., concurring).

. Judge Higginbotham contends that I propose a "generic exception to the Eleventh Amendment for declaratory relief.” This is simply not the case. As previously noted, the declaratory form of relief sought by the plaintiffs is relevant to the Eleventh Amendment inquiry only in so far as the Supreme Court has consistently considered the intrusiveness of the relief sought when defining the scope of Ex parte Young. That a declaration on these facts constitutes the least intrusive form of relief available does not mean that other forms of relief would necessarily violate the Eleventh Amendment. Yet, I need not' consider whether the Eleventh Amendment would impede our ability to issue forms of relief that the plaintiffs do not have standing to seek. That said, my approach to determining the Eleventh Amendment limits on Ex parte Young would apply with equal force in cases involving injunctions or other forms of relief.